[Civ. No. 37917. Second Dist., Div. Four. Nov. 29, 1971.]

TORRANCE EDUCATION ASSOCIATION, Plaintiff and Appellant, v. BOARD OF EDUCATION OF THE TORRANCE UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

## COUNSEL

Arnold, Smith & Schwartz, George L. Arnold and Jerome Smith for Plaintiff and Appellant.

John D. Maharg, County Counsel, James W. Briggs, Assistant County Counsel, and Donovan M. Main, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**FILES, P. J.**—(1) The issue raised by this appeal is whether the Winton Act (Ed. Code, § 13080 et seq.) prohibits a school employer from requiring teachers who are members of an employee organization to attend faculty

meetings where administrators discuss matters which are among the permissible subject matter of "meet and confer" sessions between the administration and the employee organization. By a judgment on the pleadings the superior court answered that question in the negative. We affirm the judgment.

For the purposes of this decision we must assume the truth of allegations of fact in plaintiff's second amended complaint, but the alleged facts must be distinguished from the pleader's legal conclusions which require evaluation by the court. (*Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 329 [253 P.2d 659].) The pertinent portions of the complaint will be summarized.

Plaintiff is an organization of public school employees. Its primary purpose is to represent its members "with respect to all matters relating to employment conditions and employer-employee relations." Defendants are the governing body of the Torrance Unified School District (hereinafter the Board), and a number of individuals connected with the administration of that school system.

Pursuant to the Winton Act (which we discuss below) meetings have been held between plaintiff and representatives of the Board, and such meetings will be held in the future.

In the recent past "defendants have compelled teacher employees who are members of the plaintiff to attend meetings in administrative offices of its high schools and elementary schools without permitting the official representatives of plaintiff's negotiating council to be present." Defendants have stated they will hold other such meetings in the future.

It is further alleged: "At said meetings the Assistant Superintendents conferred with individual teacher-employees with regard to matters relating to their employment conditions and employer-employee relations and made derogatory remarks about the plaintiff and its parent organization, CALIFORNIA TEACHERS ASSOCIATION, all for the purpose of undermining and by-passing plaintiff and of interfering with said teacher-employee rights under the Winton Act."

The complaint asserts that "Plaintiff's representative status has been and will be undermined" and "Plaintiff's negotiating position has been and will be weakened by the defendants' conduct."

The first count in the complaint asserts that the defendants' conduct violates the Winton Act. The second count alleges that by this same conduct "defendants have tortiously interfered with plaintiff's contracts

with its members." The third count alleges that a controversy exists between the parties as to whether defendants may hold meetings with teachers to discuss matters "which are the subject matter of negotiations between the plaintiff and the defendants." The plaintiff prays an injunction and a declaration of rights.

The Winton Act (Ed. Code, § 13080 et seq.), enacted in 1965, declares that school employees have the right to organize "for the purpose of representation on all matters of employer-employee relations" (§ 13082). A public school employer "shall meet and confer with representatives of employee organizations upon request with regard to all matters relating to employment conditions and employer-employee relations, and in addition, shall meet and confer with representatives of employee organizations representing certificated employees upon request with regard to all matters relating to the definition of educational objectives, the determination of the content of courses and curricula, the selection of textbooks, and other aspects of the instructional program to the extent such matters are within the discretion of the public school employer or governing board under the law." (§ 13085.)[1]

The same section also provides that where there is more than one employee organization representing certificated employees, the employer shall meet and confer with representatives of such organizations through a "negotiating council" composed of five to nine members selected in accordance with the statute.[2] School employers are forbidden to "interfere with, intimidate, restrain, coerce or discriminate against" employees because of their exercise of their rights to participate or to refuse to participate in employee organizations. (§ 13086.)

The statute expressly recognizes the right of each employee to represent himself and to refuse to join or participate in the activities of organizations. (§ 13082.) The final section of the act states, "The enactment of this article shall not be construed as making the provisions of Section 923 of the Labor Code [the collective bargaining policy statute] applicable to public school employees." (§ 13088.)

The history and purposes of the Winton Act are reviewed in *Berkeley Teachers Assn.* v. *Board of Education* (1967) 254 Cal.App.2d 660 [62 Cal.Rptr. 515] and *California Federation of Teachers* v. *Oxnard Elementary Sch.* (1969) 272 Cal.App.2d 514 [77 Cal.Rptr. 497]. Both the lan-

---

[1]Subsequent to the entry of judgment this language was amended in respects not material to the issue here. (Stats. 1970, ch. 1412, § 4.)

[2]The 1970 amendment changed the name to "certificated employee council."

guage of the statute and the opinions of the courts make clear that the Winton Act does not establish the collective bargaining system which is used in private employment. (See 254 Cal.App.2d at p. 671; 272 Cal. App.2d at p. 523.) The *Oxnard* case characterizes the act as "a unique or experimental procedure for dealing with employment relations in the public school system." (272 Cal.App.2d at p. 535.) This system establishes a new channel of communication between school employees and the policy-making school board and administrators, without closing off pre-existing means of communication. Section 13080, which is headed "Purpose of article," includes this language: "Nothing contained herein shall be deemed to supersede other provisions of this code and the rules and regulations of public school employers which establish and regulate tenure or a merit or civil service system or which provide for other methods of administering employer-employee relations."

Although section 13085 is headed "Negotiations," and the representatives of the employee organizations are called "a negotiating council," there is no statutory requirement that the employer "negotiate" in the sense of striving to reach a contract, bargain or agreement. Rather, the statutory obligation of the employer is expressed in the words "meet and confer."

The thrust of the complaint is that plaintiff's effectiveness as an advocate is impaired when school administrators are able to present their views to the membership directly in a closed and compulsory teachers meeting. Plaintiff's objection is not to the fact that the teachers are required to come to meetings; it is to the subjects discussed and the statements made there by the administrators in the absence of the "negotiating council."

The statutory list of the matters upon which the employee organization and the administration "shall meet and confer" covers generally the field of educational policy, objectives and methods—matters which might be discussed in any meeting between teachers and administrators. We must assume that a teachers meeting is one of the "other methods of administering employer-employee relations" which is expressly preserved by section 13080. If we start with the premise that a school administrator may lawfully use a teachers meeting as a forum for the exchange of views on educational policy and other matters of common interest, the specific charges made by plaintiff in its complaint reveal themselves as no more than an exercise in rhetoric.

The allegation that the defendants make "derogatory remarks about the plaintiff" is just another way of saying that the defendants are expressing their disagreement with, or disapproval of, what plaintiff has done or said

or will do or say. If administrators are permitted to discuss at all the subjects in which plaintiff is active, there is nothing in the Winton Act to limit such speech to expressions favorable or sympathetic to plaintiff. There is here no claim that the defendants have been guilty of fraud, deception, threats, coercion, or any other tactic which is designed to overreach the free will of the listener. The fact that the remarks seem "derogatory" adds nothing to the complaint.

The allegations that "Plaintiff's negotiating position" and plaintiff's "bargaining status" are weakened by these meetings must be read with the reminder that this statute does not call for collective bargaining. Without any prohibition of communication by school administrators directly with their teachers, plaintiff must accept the risk that the administration may persuade some teachers that the administration's position is sound and that the plaintiff's position is unsound on some particular issue.

At oral argument of this case plaintiff's counsel seemed to be contending that the decision in the *Oxnard* case (*supra,* 272 Cal.App.2d 514) means that the school employer may not confer with certificated employees in any way except through the negotiating council. The *Oxnard* decision does not support that contention. That case was an attempt by a group of teacher organizations to compel the school employer to deal directly with them, and not through the negotiating council. The appellate court affirmed a judgment denying relief. The *Oxnard* case dealt with a union attempting to bypass the negotiating council. That decision does not cast any doubt upon the propriety of school administrators discussing educational problems with teachers at a traditional teachers meeting.

The "second cause of action" of the complaint adds only the allegation that "By the aforesaid conduct, defendants have tortiously interfered with plaintiff's contracts with its members." No particulars of these "contracts" are alleged. The only meaning we can derive from this allegation is that plaintiff's members may become less confident of the value and validity of plaintiff's positions after hearing a contrary viewpoint presented at a teachers meeting. This problem is a normal and expectable concomitant of free speech. No facts alleged in this complaint establish anything remotely resembling the common law tort of interference with contractual relations.

Plaintiff has attempted to build an argument upon an analogy with employer-employee relations under section 7 of the National Labor Relations Act, which declares, "Employees shall have the right . . . to bargain collectively through representatives of their own choosing, . . ." (29 U.S.C. § 157.) Although plaintiff does not contend that the national act is applicable here, plaintiff points out that decisions interpreting that

statute have held that bargaining with employees directly is "subversive of the mode of collective bargaining which the statute has ordained, . . ." (See, e.g., *Medo Photo Supply Corp.* v. *N.L.R.B.* (1944) 321 U.S. 678, 684 [88 L.Ed. 1007, 1011, 64 S.Ct. 830].)

The argument which plaintiff seeks to make by reference to the federal statute misses a basic difference between the two statutes. Defendants are not required to bargain with plaintiff in the sense in which that term is used in the federal law. Furthermore, the facts alleged in the complaint do not indicate defendants have bargained with plaintiff's members in the labor-law meaning of the term. The complaint only charges that defendants have "conferred with individual teacher-employees" and "made derogatory remarks."

More pertinent to the allegations of the complaint here is subdivision (c) of section 8 of the federal statute, enacted as a part of the 1947 amendments, reading as follows: "(c) The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit."

We need not decide whether the matters alleged in the amended complaint here might constitute an unfair labor practice under the national act, but it is of interest that that act draws a distinction beween "bargaining" and "The expressing of any views, argument, or opinion."

The acts alleged here do not constitute a violation of the Winton Act, and plaintiff is not entitled to an injunction. Plaintiff is entitled to a declaration of rights under the complaint's third count, however, even though it is adverse to plaintiff's contentions. The judgment of the trial court should have included such a declaration, making clear that the decision was against plaintiff on the merits. But a reversal of the judgment is unnecessary because our opinion includes an adequate declaration for this purpose. (See *Anderson* v. *Stansbury* (1952) 38 Cal.2d 707, 717 [242 P.2d 305]; *Haley* v. *L. A. County Flood Control Dist.* (1959) 172 Cal.App.2d 285, 292 [342 P.2d 476].)

The judgment is affirmed.

Kingsley, J., and Dunn., J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 26, 1972.