[Civ. No. 33156. First Dist., Div. Two. Oct. 4, 1974.]

CERTIFICATED EMPLOYEES COUNCIL OF THE
MONTEREY PENINSULA UNIFIED SCHOOL DISTRICT et al.,
Plaintiffs and Appellants, v.
MONTEREY PENINSULA UNIFIED SCHOOL DISTRICT,
Defendant and Respondent.

**COUNSEL**

Stewart & Steiner and W. K. Stewart for Plaintiffs and Appellants.

Peter T. Galiano and Richard C. Anthony as Amici Curiae on behalf of Plaintiffs and Appellants.

William H. Stoffers, County Counsel, and Paul R. De Lay, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**TAYLOR, P. J.**—This is an appeal by two Monterey teacher organizations[1] and one of their officers[2] (teachers) from a judgment denying their petition for a writ of mandate and a preliminary injunction against the Monterey Peninsula Unified School District (district). The matter presents a question of first impression: whether the development and adoption of teacher evaluation and assessment guidelines pursuant to Education Code sections 13485-13488 (hereafter Stull Act) by the district is subject to the "meet and confer" process required by Education Code sections 13080-13090 (hereafter Winton Act).[3]

Preliminarily, we set forth the pertinent provisions of each act to facilitate an understanding of the questions presented.

The Stull Act (Stats. 1971, ch. 361, § 40, operative Sept. 1, 1972), consistent with its legislative purpose of establishing a uniform system of evaluation and assessment of the performance of certificated personnel (§ 13485), requires the governing board of each school district to develop and adopt for this purpose specific guidelines that shall include but shall not necessarily be limited in content to certain specified elements. (§ 13487.)

Section 13486 provides: "In the development and adoption of these guidelines and procedures, *the governing board shall avail itself of the advice of the certificated instructional* personnel in the district's organiza-

---

[1] The Certificated Employees Council of the Monterey Peninsula Unified School District (hereafter MCEC) and the Monterey Bay Teachers Association of the Monterey Peninsula Unified School District (hereafter MBTA).

[2] Sam Alley, a certificated employee (teacher) of defendant school district, is chairman of the MCEC and president of the MBTA.

[3] All code citations are to the Education Code unless otherwise noted.

tion of certificated personnel." (Italics supplied.) The remaining relevant portions of the Stull Act will be set forth as needed.

The Winton Act (Stats. 1965, ch. 2041, § 2, as amended), so far as pertinent, requires that public school employers "shall meet and confer with *representatives of certificated* and classified *employee organizations*[4] *upon request with regard to all matters relating to employment conditions and employer-employee relations,* and *in addition, shall meet and confer with representatives of employee organizations* representing certificated employees upon request *with regard to procedures relating to the definition of educational objectives, the determination of* the content of courses and curricula, the selection of *textbooks, and other aspects of the instructional program* to the extent such matters are within the discretion of the public school employer or governing board under the law." (§ 13085; italics supplied.)

Under this *meet and confer* requirement, the public school employer and the representatives of the employee organizations "have the mutual obligation to exchange freely information, opinions, and proposals; and to make and consider recommendations under orderly procedures in a conscientious effort to reach agreement by written resolution, regulation, or policy of the governing board effectuating such recommendations" (§ 13081).

The basic facts, as found by the trial court, are as follows: Pursuant to section 13486 of the Stull Act, the district established the Certificated Personnel Evaluation Committee to develop its guidelines. This committee, comprised of eight teachers and seven administrators, met 22 times between November 1, 1971, and June 19, 1972, and was responsible for the guidelines adopted by the district on August 14, 1972. At the time of adoption, the district formally stated that the guidelines were "interim" in nature and that certain portions would be "subject to 'meeting and conferring' under the Winton Act . . . upon request by petitioners." No "meet and confer" meetings had taken place, either before or after the adoption of the guidelines on August 14, 1972. The teachers made a request to "meet and confer" on August 14, but have not done so subsequently, although at all times the district has been ready and willing to do

---

[4]Section 13085 also provides that in districts with more than one teacher organization, the employer meets and confers with representatives of all the organizations through a certificated employee council (CEC) consisting of not more than nine nor less than five members appointed by the respective teacher organizations in numbers proportionate to the membership.

so. The court then concluded that the district was not required to "meet and confer" on the Stull guidelines with the teachers pursuant to the Winton Act and entered its judgment denying the relief requested.

On appeal, the teachers maintain that the Stull guidelines adopted by the district are invalid as the district failed to "meet and confer" with the MCEC[5] prior to August 14, 1972, as required by the Winton Act.

We turn first to the teachers' contention that the trial court erred in concluding that the Legislature did not intend to make the Stull guidelines subject to the Winton Act "meet and confer" requirements. The court indicated that section 13486 of the Stull Act provides its own procedure for giving teachers a voice in the development and adoption of the guidelines and that this requirement was satisfied by the district's utilization of the Certificated Personnel Evaluation Committee. The court reasoned that the section 13486 requirement for "advice of the certificated instructional personnel" would be meaningless if the Winton "meet and confer" provisions of section 13085 were applicable. ■ The court then followed the well-established rules of statutory construction that the later and more specific language of section 13486 superseded the earlier and more general language of sections 13080-13085.[6]

However, these rules do not apply unless the language of two statutory enactments cannot be harmonized. ■ The basic rule is that sections of the Education Code bearing on the same subject must be read and construed together where possible (*Brown* v. *Bozeman,* 138 Cal.App. 133 [32 P.2d 168]; see *County of Placer* v. *Aetna Cas. etc. Co.,* 50 Cal.2d 182, 188-189 [323 P.2d 753]).

■ Applying this rule, we interpret the Stull "advice" requirement of section 13486 as a mandatory minimum requirement for teacher participation in the development and adoption of the teacher evaluation and

[5]As the teachers in the district were represented by two organizations, the MBTA and the American Federation of Teachers, pursuant to section 13085 of the Winton Act, meet and confer negotiations with the school district were conducted through the MCEC.

[6]While recognizing that they are not controlling, the teachers have called our attention to three contrary superior court decisions on a substantially similar question in this dsitrict, that have apparently not been appealed (California Teachers Association, et al. v. San Mateo City School District, Superior Court, San Mateo County, No. 173401; Alameda Federation of Teachers, et al. v. Alameda Unified School District, Superior Court, Alameda County, No. 430072; San Leandro Federation of Teachers, et al. v. San Leandro Unified School District, et al., Alameda County Superior Court, No. 429668).

assessment guidelines. Without this "advice" requirement, it would be possible for the guidelines to be developed and adopted without the participation of the affected employees as the Winton Act does not *require* a school employer to meet and confer on an issue unless *requested* to do so by the appropriate teacher organization representative. Thus, the "advice" requirement of Stull's section 13486 is not meaningless and is readily harmonized with the "meet and confer" requirement of Winton's section 13085.

Our conclusion is in accord with that provided by the legislative counsel to Senator Albert S. Rodda, a coauthor of the Stull Act. By a letter dated June 12, 1972, the legislative counsel stated that "In our opinion the certificated employee evaluation and assessment guidelines and procedures which are required to be adopted by school district governing boards . . . are matters upon which the governing board would, *upon request* [by the appropriate employee organization] be *required* by the Winton Act to meet and confer" (italics partially added). Obviously the Legislature thought it *mandatory* that the school employer avail itself of the advice of the teachers within the "district's organization of certificated personnel." (§ 13486.) While the Stull Act in section 13486 provides its own procedures for giving teachers a voice in the development and adoption of the guidelines, this is in *addition to,* not to the exclusion of the meet and confer process.[7] The Winton Act, in accordance with its express purpose, strengthens the mandatory Stull requirement by providing for additional teacher participation at the teacher's request.

The teachers next contend that the trial court erred in concluding that the Stull guidelines regulate tenure and are, therefore, exempt from the "meet and confer" requirements of the Winton Act. The first paragraph of section 13080 reads as follows: "It is the purpose of this article to promote the improvement of personnel management and employer-employee relations within the public school systems in the State of California by providing a uniform basis for recognizing the right of public school employees to join organizations of their own choice and be represented by such organizations in their professional and employment relationships with public school employers and to afford certificated employees a voice in the formulation of educational policy. *Nothing* contained *herein shall be* deemed to *supersede* other provisions of this code and *the rules and regulations of public*

[7]The district argues that if so, it has satisfied the spirit if not the letter of the Winton meet and confer requirement by permitting the teachers to appoint 10 of the 17 members of the Certificated Personnel Evaluation Committee that developed its Stull guidelines. While this action was commendable, it does not, as the district admits, satisfy the strict requirements of the Winton Act.

*school employers* which *establish and regulate tenure* or a merit or civil service system or which provide for other methods of administering employer-employee relations. *This article is intended, instead, to strengthen tenure, merit, civil service and other methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public school employers by which they are employed.*" (Italics supplied.)

The court relied on the second sentence of the first paragraph for its conclusion. However, reading the entire first paragraph with the second sentence in its proper context, it is apparent that the Legislature expressly intended tenure regulations to be subject to the "meet and confer" requirement. The "meet and confer" process was not intended to replace or "supersede" rules and regulations which establish and regulate tenure or other methods of administering employer-employee relations (*Torrance Education Assn.* v. *Board of Education,* 21 Cal.App.3d 589 [98 Cal.Rptr. 639]), but was intended to *strengthen* those rules and regulations by establishing orderly and uniform methods of communication between teachers and administrators. While we have found no cases interpreting section 13080 of the Winton Act, *Los Angeles County Firefighters Local 1014* v. *City of Monrovia,* 24 Cal.App.3d 289 [101 Cal.Rptr. 78], interpreted substantially identical language in the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3501), which amended and expanded the George Brown Act (Gov. Code, §§ 3500-3509, effective Sept. 15, 1961), the Government Code counterpart of the Winton Act, and a source of the Winton Act (see *Berkeley Teachers Assn.* v. *Board of Education,* 254 Cal.App.2d 660, 663-664 [62 Cal.Rptr. 515]).

Government Code section 3500 (Stats. 1961, ch. 1964, § 1; amended Stats. 1968, ch. 1390, § 1, operative Jan. 1, 1969), so far as pertinent, then provided: "It is the purpose of this chapter to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations. It is also the purpose of this chapter to promote the improvement of personnel management and employer-employee relations within the various public agencies in the State of California by providing a uniform basis for recognizing the right of public employees to join organizations of their own choice and be represented by such organizations in their employment relationships with public agencies. *Nothing* contained *herein shall be deemed to supersede* the provisions of existing state

law and the charters, ordinances, and rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations. *This chapter is intended,* instead, *to strengthen* merit, civil service and other methods of administering employer-employee relations through the establishment of *uniform and orderly methods of communication* between employees and the public agencies by which they are employed." (Italics added.)

In the *Monrovia* case, the city, like the district here, contended that "supersede" language created a specific exemption. In rejecting this contention, the court said at 295: "It appears from our examination of the entire act that the Legislature intended by it to set forth reasonable, proper and necessary principles which public agencies must follow in their rules and regulations for administering their employer-employee relations, including therein specific provisions for the right of public employees, as individuals and as members of organizations of their own choice, to negotiate on equal footing with other employees and employee organizations, without discrimination; that the Legislature did not intend thereby to preempt the field of public employer-employee relations except where public agencies do not provide reasonable 'methods of administering employer-employee relations through . . . uniform and orderly methods of communication between employees and the public agencies by which they are employed' (§ 3500) . . .'"

Nor do we think that the Stull Act is exclusively a tenure regulation. As indicated above, in Stull, "intent of the Legislature [was] to establish a uniform system of evaluation and assessment of the performance of certificated personnel" by requiring "the development and adoption by each school district of objective evaluation and assessment guidelines" (§ 13485). Stull does not require that school districts use the guidelines for determining tenure nor does it require any other consequence. While many school districts will undoubtedly utilize the evaluation and assessment guidelines in making determinations of tenure, in and of itself this fact does not make them tenure regulations. Even assuming that the Stull guidelines were intended to regulate tenure, Winton does not exclude tenure regulations from its "meet and confer" requirements.

Nor can we agree with the trial court's conclusion that the Stull guidelines are beyond the scope of the Winton Act as they do not involve (1) employment conditions and employer-employee relations, or (2) the other items specified by section 13085, including the definition of *educational objectives.*

As to the first point, section 13488 (set forth below)[8] of Stull expressly provides that the assessment made pursuant to the guidelines shall be reduced to writing and a copy transmitted to the *affected employee who has the right to initiate a written response. The response becomes a permanent attachment of the employee's personnel file.* Before the end of the school year, the employee and the evaluator are to meet to discuss the evaluation. Pursuant to section 13489 (set forth below),[9] the evaluation includes recommendations for improvement. It is difficult to imagine a matter more directly related to *employer-employee relations* and working conditions than the evaluation made pursuant to the guidelines that becomes a permanent attachment of the employee's personnel file and the recommendations for improvement that are used to evaluate subsequent performance. The district, in fact, concedes this relationship.

As to the second point concerning the definition of educational objectives, the determination of course and curricular content and the selection of textbooks, all specified in Winton's section 13085 as subject to "meet and confer," we note the advice given to the district by its own counsel on August 7, 1972, indicated the relationship between these items and the four mandatory elements of the Stull guidelines of section 13487, quoted below.[10]

---

[8]Section 13488: "Evaluation and assessment made pursuant to this article shall be reduced to writing and a copy thereof shall be transmitted to the certificated employee not later than 60 days before the end of each school year in which the evaluation takes place. The certificated employee shall have the right to initiate a written reaction or response to the evaluation. Such response shall become a permanent attachment to the employee's personnel file. Before the end of the school year, a meeting shall be held between the certificated personnel and the evaluator to discuss the evaluation."

[9]Section 13489: "Evaluation and assessment of the performance of each certificated employee shall be made on a continuing basis, at least once each school year for probationary personnel, and at least every other year for personnel with permanent status. The evaluation shall include recommendations, if necessary, as to areas of improvement in the performance of the employee. In the event an employee is not performing his duties in a satisfactory manner according to the standards prescribed by the governing board, the employing authority shall notify the employee in writing of such fact and describe such unsatisfactory performance. The employing authority shall thereafter confer with the employee making specific recommendations as to areas of improvement in the employee's performance and endeavor to assist him in such performance.

"Hourly and temporary hourly certificated employees, other than those employed in adult education classes who are excluded by the provisions of Section 13485, and substitute teachers may be excluded from the provisions of this section at the discretion of the governing board."

[10]"(a) The establishment of standards of expected student progress in each area of study and of techniques for the assessment of that progress.

 The county counsel concluded that the four·elements of 13487 were within the scope of the Winton Act to the following extent: (a) The establishment of standards of expected student progress. This is in the purview of the *meet and confer* requirement since it falls within educational objectives and the determination of courses and curricula; (b) The assessment of certificated personnel competence. While assessment of employee personnel is a management function and not a proper subject for *meet and confer,* the *criteria* for assessment is a proper meet and confer item; (c) The assessment of other duties. Again, assessment itself is a management function, but aspects such as salary, hours of extra duty, type of extra duty, place of employment, etc., are proper meet and confer items; (d) Establishing of procedures and techniques for ascertaining that the certificated employee is maintaining proper control and preserving a suitable learning environment. These are procedural matters properly subject to the meet and confer requirement.

We find the above analysis persuasive and adopt it here. Our conclusion that the Stull guidelines are within the scope of the "meet and confer" requirement of section 13085 is consistent with the language indicating that the four mandatory elements set forth in section 13487 are non-exclusive. Hence, other specific areas mentioned in section 13085 covered by the Winton Act might be included in the guidelines. Accordingly, we conclude that the Winton "meet and confer" requirement is applicable as such to the development and adoption of Stull guidelines by the district. As indicated above, no contrary legislative intent appears in the Stull Act.

 Finally, we turn to the district's contention that in any event, the teachers were estopped from asserting that the development and adoption of the Stull guidelines were subject to the requirement of the Winton Act, as they never made a request to meet and confer until the guidelines were adopted on August 14, 1972, and subsequently refused to do so. The district erroneously urges that the trial court found that the teachers made no meet and confer requests prior to August 14. The precise language of the court's finding is that the teachers made "a request . . . *on or about August 14*" (italics added) and made no request subsequently. Thus, the

"(b) Assessment of certificated personnel competence as it relates to the established standards.

"(c) Assessment of other duties normally required to be performed by certificated employees as an adjunct to their regular assignments.

"(d) The establishment of procedures and techniques for ascertaining that the certificated employee is maintaining proper control and is preserving a suitable learning environment."

court made no finding to the effect that there were no prior requests, nor could it. The uncontroverted evidence in the record indicates that in January of 1972, MCEC orally indicated an intention to meet and confer on the Stull guidelines. On April 5, and again on June 8, MCEC asked the district for a completion date on the Stull document in order to meet and confer on the guidelines. The June 8 request stated that MCEC "would be demanding to meet and confer on it and . . . believed it to be a negotiable document." After the district indicated that there was some question as to whether the Stull guidelines were subject to meet and confer requirements, MCEC asked the district to obtain an opinion from the county counsel.[11]

On August 1 when MCEC again asked the district to meet and confer on the guidelines, MCEC was told to meet with the Certificated Personnel Evaluation Committee instead. MCEC rejected this suggestion on grounds that the only appropriate procedure under the Winton Act was direct negotiation with the district's representative. While MCEC may never have made a formal written demand to meet and confer on the Stull guidelines, the district had sufficient notice by MCEC's repeated requests. In addition, the district's representative testified that he knew MCEC wanted to meet and confer on the Stull guidelines *after* they were in completed form and *before* they were adopted. We conclude that the "request" requirement of the Winton Act (§ 13085) was satisfied by MCEC long before the guidelines were adopted on August 14, 1972.

Even if a request to meet and confer had not been made until August 14, the teachers would not be estopped to object to the district's adoption of the guidelines. Assuming arguendo that Stull required adoption of guidelines within a reasonable time of its September 1, 1972 effective date (as the trial court concluded below), that left at least 17 days for the district to meet and confer with MCEC. In the event no agreement was reached in that time, the district could have adopted whatever evaluation guidelines it desired since, under the Winton Act, the final decision on an issue rests with the district. Nor can we agree that Stull required adoption of the guidelines by September 1, 1972. Stull contains no specific requirement and there is no apparent reason why the Legislature would do so, for the act provides that evaluations and assessments of performance need be made only once a year for probationary personnel and only once every

---

[11]As indicated above, the county counsel rendered an opinion on August 7, 1972, concluding that portions of the Stull guidelines *were subject to the meet and confer requirement of the Winton Act.*

other year for personnel with permanent status (§ 13489). Thus, the district would not need to make use of the guidelines until about six months[12] into the 1972-1973 school year.

The judgment is reversed, with directions to the trial court to grant the teachers' petition for a writ of mandate and issue an injunction to restrain the district from applying its guidelines until it has complied with the *meet and confer* requirements of Winton.

Rouse, J., and Bray, J.,* concurred.

A petition for a rehearing was denied November 1, 1974, and respondent's petition for a hearing by the Supreme Court was denied December 11, 1974.

---

[12]Section 13443 provides that dismissal notice must be given to probationary teachers no later than March 15 of the school year; section 13443.6, pertaining to principals, no later than March 1. These dates are jurisdictional and mandatory (*Ward* v. *Fremont Unified Sch. Dist.,* 276 Cal.App.2d 313, 322 [80 Cal.Rptr. 815]).

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.