[Civ. No. 48842. First Dist., Div. Three. Mar. 20, 1981.]

CHARLES HAMILTON et al., Plaintiffs and Appellants, v.
STATE BOARD OF EDUCATION, Defendant and Respondent;
ACALANES UNION HIGH SCHOOL DISTRICT et al.,
Interveners and Respondents.

COUNSEL

Ring, Athey, Ginocchio, Lane & Ring and August J. Ginocchio for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Charlton G. Holland and John Davidson, Deputy Attorneys General, for Defendant and Respondent.

McCutcheon, Doyle, Brown & Enersen, John W. Fowler and Robert W. Wood for Interveners and Respondents.

OPINION

**BARRY-DEAL, J.**—This appeal is from the superior court judgment denying a petition for writ of mandate filed pursuant to Code of Civil Procedure section 1085. If granted, the writ would have overruled a decision by the State Board of Education (State Board) rejecting appellants' petitions for formation of a new elementary school district and a new high school district in Walnut Creek.

Interveners in this action are the three existing school districts which would be affected by the proposed new Walnut Creek districts and

interested parents of those districts. Interveners urge affirmance of the judgment.

The only issue on appeal is whether the State Board of Education has discretion to deny a petition for formation of a new school district where the petition meets the criteria guidelines established for review of such petitions in the California Administrative Code, title 5, section 18573. We conclude that the State Board of Education has such discretion.

## FACTS

In March 1977, appellants, who are residents and taxpayers of the Walnut Creek area, petitioned pursuant to Education Code section 35500 et seq.,[1] for the formation of new Walnut Creek elementary and high school districts, to be carved out of the existing Mt. Diablo, Acalanes, San Ramon Valley and Lafayette districts. It is not contended that appellants failed to comply with the procedural requirements for such petitions. They submitted their petitions, signed by more than 25 percent of the resident voters of the proposed new district, to the Contra Costa County Clerk, who forwarded them to the county committee on school district organization and to respondent State Board of Education (State Board).

On June 14, 1977, the county committee submitted its report and recommendation with regard to the petitions to the State Board. The committee, after hearings on the petitions, recommended denial.

On July 14, 1977, Wilson Riles, Superintendent of Public Instruction and Director of the Department of Education, submitted a written report on the petitions to respondent State Board; he recommended denial on the grounds that the proposed new districts would adversely affect the future school district organization of the county, would disrupt the educational programs of the three existing affected districts, and would not be compatible with the county's master plan for school unification. Denial was recommended despite the fact that the conditions and guidelines established by section 35512.1 and California Administrative Code, title 5, section 18573, for review of such petitions had been met.

---

[1]All section references are to the Education Code unless otherwise indicated.

At the conclusion of the public hearing, respondent State Board disapproved the petitions.

The superior court found that respondent State Board is vested with the discretion to approve or disapprove a petition for the formation of a new school district and that respondent State Board's exercise of that discretion in this instance was neither arbitrary nor capricious. Appellants' petition for a writ of mandate was denied.

### Discussion

Appellants contend that the State Board is compelled to approve and send to the electorate a petition for the formation of a new school district which meets the criteria and standards of California Administrative Code, title 5, section 18573. They rely solely upon section 35500 which states: "The State Board of Education shall establish minimum standards for the formation of districts which it shall apply in approving or disapproving petitions for the formation of new districts."

Appellants maintain that the mandatory language of section 35500—"shall establish" and "shall apply"—controls the disposition of this case.[2] They argue that the State Board, having enacted criteria pursuant to section 35500 in Administrative Code section 18573, is bound by section 35500 to apply that criteria, and if those criteria are met—as in the instant case—the State Board is bound to approve the petition.

It is respondents' position that the State Board's approval is discretionary and that section 35500 merely authorizes the establishment of minimum standards which must be met before the board will give any petition its consideration.

The language of section 35500 appears to be sufficiently ambiguous to require interpretation consistent with legislative intent. (See *People v. Rodgers* (1978) 79 Cal.App.3d 26, 30 [144 Cal.Rptr. 602]; *Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 256 [104 Cal.Rptr. 761, 502 P.2d 1049].) The following legislative history is pertinent to a determination of the Legislature's intent in enacting section 35500. (See *California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].)

---

[2]Section 75 defines "shall" as mandatory and "may" as permissive.

## *Legislative History*

The entire Education Code, substantially enacted in 1943 and recodified in 1959 (the "old code"), was repealed and reenacted in 1976 effective 1977 (the "new code"). Section 35500 of the new code identically reenacted former section 1972 which was added to the old code in 1963 (Stats. 1963, ch. 629, § 4, p. 1580).[3]

Section 1972 was the first section of division 5, chapter 2 of the old code, entitled Formation of Districts. The chapter made provision for the initiation of actions to form new districts by a petition signed by at least 25 percent of the resident electorate of the proposed new district. (§ 1992.) Petitioners were granted a hearing (§ 1994), subsequent to which the State Board approved or disapproved the proposed new district (§ 1995). Section 1972 was also the first section of article 1, General Provisions. Research has failed to unearth any formal embodiment of minimum standards prior to 1969.

Section 3100 of the old code (§ 4200 of the new code) was enacted in 1964 and articulated the Legislature's intent in enacting the Unruh School Act (Stats. 1964, first Ex. Sess., ch. 132), which called for the drafting of master plans and ratification elections at the local level designed to effectuate unified school districts throughout the state. The master plan was to be developed locally by the county committee on school district organization. (§ 3100.5.) Section 3100 authorized State Board approval of proposals for districts based upon the division of existing high school districts provided that five conditions were met. Approval was discretionary: "The State Board of Education *may* approve proposals for the formation of districts ... [italics added]."

The discretion of the State Board in approving section 3100 proposals was amplified in 1970. The section was amended as follows: 1964 language—"The State Board of Education may approve proposals ... provided that the board has determined ... that all of the following conditions are met ...." 1970 amended language—"The State Board of Education may approve proposals ... provided that the board has determined ... that the following conditions are substantially met: ..." The 1970 amendment deleted the words "all of" and added the word "substantially." In addition, the amended section added a paragraph following the five itemized conditions which allowed the State Board to

---

[3]A chronological chart of the statutory enactments is attached as appendix A.

approve a proposal which did not literally meet the conditions in an exceptional situation.

In 1969, section 2365 was redrafted to specify the contents of the county committee report and recommendation required when a petition involving the transfer of territory from one district to another was being considered. The new section 2365 required a statement from the county committee on whether the proposed transfer would adversely affect the school district organization of the county, whether the proposed transfer was compatible with local master plans approved by the State Board, and what effect the transfer would have on racial or ethnic integration of the involved schools. The county report might contain any other pertinent matter. The third item parallels the fifth condition of section 3100, i.e., that the proposed district not promote racial or ethnic discrimination or segregation.

Apparently in response to the 1969 revision of section 2365, California Administrative Code, title 5, chapter 4, sections 18570-18574, were adopted relating to procedures and hearings on proposals and petitions for the reorganization of school districts. The cited authority for chapter 4 was sections 2365 and 3100 of the Education Code. Section 1972 (§ 35500 of the new code) was not cited as authority. Section 18573 outlined criteria to be met by any proposal for reorganization *other than* the formation of unified school districts. Presumably, unification remained subject to the conditions dictated by section 3100 (§ 4200 of the new code). Section 18573 listed five criteria designed to aid in the evaluation of two requirements of the section 2365 county report—adverse impact upon school district organization of the county and conflict with county master plans. Section 18574 was addressed to the racial integration issue: "[I]t is the intent of the board to ... provide for the maximum in equal educational opportunity for children." The criteria of section 18573 also evidence a concern with the legislative goal of section 3100, to ultimately implement statewide unification of school districts.

In 1976 the Legislature enacted sections 1992.2 and 1993.1, which were reenacted in toto in the new code as sections 35511.5 and 35512.1. Section 1992.2 outlined requirements for the county committee report to be submitted upon petitions for new districts, including elementary school, high school, and community college districts. Section 1992.2 adopted for advisement by the county committee report the first two elements of section 2365, i.e., whether the new district would adversely

affect school district organization of the county and be compatible with county master plans (§ 1992.2, subds. (a) and (b)). The third element requested advisement regarding compliance with the provisions of section 1993.1. In all other respects, section 1992.2 resembled section 2365, including the provision for inclusion of "other pertinent matters" in the report.[4]

Section 1993.1 closely paralleled the substantive provisions of section 3100, including the same five criteria. Section 1993.1 also was discretionary: "The State Board of Education *may* approve petitions...." (Italics added.) The section further provided, as in section 3100, that the criteria might be waived in an exceptional situation. A new provision required that, "The State Board of Education *shall* adopt rules and regulations to carry out the intent of this section." (Italics added.)

Administrative Code section 18573 was redrafted in 1976 to correspond to the new Education Code sections 1992.2 and 1993.1. The new section 18573 provided expanded guidelines for evaluating each of the five criteria listed in section 1993.1. Although referenced to sections 1993.1 and 3100, section 1972 (§ 35500 of the new code) was now cited as authority for section 18573 in addition to two other statutes not pertinent here. Although the racial segregation issue was now incorporated in section 18573, subdivision (b)(5), section 18574 continued to embody a policy of providing maximum equal education opportunity for children.

Sections 1992.2 and 1993.1 were repealed due to enactment of the new 1977 Education Code prior to their appearance in any of the annotated California codes.

Upon enactment of the new code replicating sections 1992.2 and 1993.1 in sections 35511.5 and 35512.1, section 18573 remained the same.[5] Section 1972, now section 35500, continued to be cited inter alia as authority for section 18573. The reference to section 1993.1 was deleted and the new section 35512.1 no longer referenced.

---

[4]We note that section 1992.2 incorporated, by means of section 1993.1, subdivision (e), the racial segregation prohibition which constituted the third element of section 2365.

[5]The respondent State Board's brief attaches a copy of section 18573 as amended in 1980 and is misleading. The new amendment has added a sixth criteria: "The proposal shall not significantly adversely affect the educational programs of districts affected by the proposal." (§ 18573, subd. (b)(6).) That, of course, was one of the three bases for

Thus, as enacted just prior to their repeal, the old code sections 1972, 1992.1 and 1993.1, as well as Administrative Code, title 5, section 18573, were identical to the new code sections 35500, 35511.5 and 35512.1 and Administrative Code, title 5, section 18573. As a matter of statutory construction, the new provisions are therefore to be construed as restatements and continuations, and not as new enactments. (Ed. Code, § 3.)

### Interpretation

As a general principle, the provisions of the Education Code "are to be liberally construed, with a view to effect its objects and to promote justice." (Ed. Code, § 2.)

Although the general provision of section 35500 (formerly § 1972) has required since 1963 that the State Board establish and apply criteria in making decisions with regard to school district formation, in fact, no criteria were established pursuant to that section until 1976, in response to enactment of section 1993.1 (now § 35512.1). Section 35512.1 itself requires that the State Board adopt rules and regulations, but it is section 35500 which authorizes the establishment of minimum standards. Although the authority for Administrative Code, title 5, section 18573 derives from section 3500, the current draft of that section was enacted in 1976 in direct response to the needs of section 1993.1 (now § 35512.1), and not in response to the mandatory language of section 35500 which had been largely ignored for the previous 13 years.

Thus focus is properly shifted to section 35512.1. The language of the section is clearly discretionary: "The State Board of Education *may* approve petitions ... [italics added]," if the conditions are substantially met. The addition of "substantially" to the statute in 1970 indicates an intent to give the State Board increased flexibility in its decisions. The statute further emphasizes the discretion of the State Board by allowing it to approve petitions where the conditions are not met if in its opinion an exceptional situation is presented. The only mandatory language contained in section 35512.1 is the requirement that the State Board "shall" adopt rules and regulations to carry out the intent of the section. "Rules and regulations" suggest procedural items such as notice, hearing, etc., rather than criteria which are already spelled out by section 35512.1. The clear language of these sections states that the State

---

rejection of appellants' petitions, but was not a part of section 18573 at that time. There has been no corresponding amendment of either section 35512.1 or section 4200.

Board has the discretion, but is not compelled, to approve a petition which at least substantially complies with the conditions of the section.

In addition, appellants ignore the word "minimum" in section 35500. ■ The words of a statute should be accorded their usual, ordinary and common sense meaning, keeping in mind the purpose for which the statute was adopted. (*In re Rojas* (1979) 23 Cal.3d 152, 155 [151 Cal.Rptr. 649, 588 P.2d 789]; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 43 [127 Cal.Rptr. 122, 544 P.2d 1322].) ■ The phrase "minimum standards" indicates minimal threshold requirements for consideration of the petition. The legislative intent in enacting former section 1972 was to ensure that school district proposals met some minimum standards. This comports with section 35512.1 which requires a petition to substantially meet the five conditions in order to be considered for approval. Under section 35512.1, absent an exceptional circumstance, the State Board may not approve a petition which fails to comply with the conditions. It is under no compulsion to approve a petition which meets those requirements.

■ In view of the enactment of section 35512.1, it is not at all clear that section 35500 even requires the expanded guidelines provided by Administrative Code, title 5, section 18573. Section 35512.1 itself appears to satisfy section 35500's requirement of minimum standards. Thus interpreted, section 18573 merely provides guidelines to the State Board in the application of the section 35512.1 criteria.

Appellants' construction would place section 35500 in direct conflict not only with the discretionary language of section 35512.1, but also with section 35511.5. ■ Sections of the Education Code *in pari materia* must be read and construed together where possible. (*Certificated Employees Council* v. *Monterey Peninsula Unified Sch. Dist.* (1974) 42 Cal.App.3d 328, 333 [116 Cal.Rptr. 819].) This represents only a particular statement of the general rule that a statute must be construed within the context of the entire statutory system of which it is a part, with a view toward harmonization. (*California Mfrs. Assn.* v. *Public Utilities Com., supra,* 16 Cal.3d 836, 844; *People* ex rel. *Younger* v. *Superior Court, supra,* 16 Cal.3d 30, 40.)

■ Section 35511.5 requires that the county committee's report advise whether the new school district would adversely affect the school organization of the county and be compatible with the county master plan—both criteria upon which appellants' petition was rejected. There

is no reason to have the committee report on those factors if they are not to be taken into consideration in approving or disapproving the petition. Similarly, it would be meaningless for section 35511.5 to specifically provide for the inclusion of "other pertinent matters" if not available for consideration in the decision-making process. Such "other pertinent matters" might be the adverse impact on other affected school districts, a factor used in the instant case, and since embodied in the 1980 revision of section 18573.

The construction appellants would impose upon section 35500 contradicts established rules of statutory construction and defies the common sense meaning of "minimum standards" as opposed to "standards" without modification. Furthermore, in view of the fact that no Administrative Code sections were enacted pursuant to section 35500 (formerly § 1972) until 1976, the better interpretation is that section 35512.1 satisfies the requirement of section 35500 and that Administrative Code, title 5, section 18573 merely provides amplified guidance to the board in its application of section 35512.1.

The judgment denying the writ of mandate is affirmed.

Scott, Acting P. J., and Feinberg, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 13, 1981.

---

APPENDIX A

| | OLD EDUCATION CODE | NEW EDUCATION CODE | ADMINISTRATIVE CODE |
|---|---|---|---|
| 1963 | § 1972 | | |
| 1964 | § 3100 | | |
| 1969 | § 2365 (redrafted) | | § 18573 (old) |
| 1970 | § 3100 (amended) | | § 18573 (new) |
| 1976 | § 1992.2) enacted<br>§ 1993.1) | | |
| 1977 | | enacted:<br>§ 35500 (1972)<br>§ 35511.5 (1992.2)<br>§ 35512.1 (1993.1)<br>§ 4200 (3100) | |