[Civ. No. 1494. Fifth Dist. Sept. 15, 1972.]

GOVERNING BOARD OF THE OAKDALE UNION
SCHOOL DISTRICT OF STANISLAUS COUNTY,
Plaintiff and Respondent, v.
MARIE SEAMAN, Defendant and Appellant.

## COUNSEL

John D. Brophy, Seaman & Seaman and Wareham Seaman, Jr., for Defendant and Appellant.

T. W. Martz, County Counsel, and Robert R. Elledge for Plaintiff and Respondent.

## OPINION

**GARGANO, J.**—Appellant, a permanent school teacher for the respondent school district, appeals from a judgment of the Superior Court of Stanislaus County, decreeing that the governing board of the district may dismiss her. ■ Permanent certified employees of a school district may not be dismissed except for one or more of the causes enumerated in Education Code section 13403, and, under the law in effect at the time of appellant's dismissal, it was the function of the superior court to determine whether such cause existed.[1]

The basic facts are undisputed. On April 14, 1969, the governing board of the Oakdale Union School District established the school day calendar for the 1969-1970 school year; the calendar provided that September 10, 11, 12, 16 and 17 were teaching days and that all teachers were required to be at the school on September 3, 4 and 5 for orientation. A letter containing this information was mailed to the district's teachers on or about August 12, 1969.

On June 24, 1969, appellant, who had been employed by the district eight years and had been offered a contract to teach mentally retarded children at the Fair Oaks School for the 1969-1970 school year, appeared before the governing board of the district, with her husband, and applied for a leave of absence until October 1, 1969; Mr. Seaman also taught retarded children at a high school in Stockton, and the couple had been invited to participate in an international conference on mental health which was going to be held in Paris in September. A motion to grant the leave failed to pass for lack of a second. A few days later Mrs. Seaman signed her 1969-1970 school year contract.

---

[1]See former section 13412 of the Education Code. This section was amended in 1971 and section 13414 was enacted providing for a hearing under the Administrative Procedures Act of the Government Code rather than a proceeding in the superior court.

In July 1969, appellant wrote from Yokohama, Japan, to Clarence Bowman, the superintendent of the district, and once again requested a leave of absence; in her letter Mrs. Seaman reiterated the reasons for the leave and suggested that a Mrs. Rae Finch be engaged as a substitute during the absence; Mrs. Finch had assisted appellant in the past and was familiar with appellant's classroom procedures. Mrs. Seaman received no response to this request.[2] Nevertheless, she did not return to the school until October 2, 1969.

On September 19, 1969, Superintendent Bowman filed a verified written statement with the district's governing board alleging that there existed cause to dismiss appellant as a permanent employee of the district; Bowman charged that appellant had violated the regulations of the district governing board "by refusing to return to her employment as teacher at the beginning of the school year 1969-1970, after having applied for leave of absence but such leave having been denied." Thereafter, the district board served Mrs. Seaman with a notice that the board intended to dismiss her unless she demanded a hearing. Appellant made a timely demand for hearing, and the board instituted this action in the superior court. The complaint, predicated on the charge set forth in Mr. Bowman's written statement, asked the court to inquire into the charge, to determine whether or not it was true, and if true, whether it constituted sufficient grounds for Mrs. Seaman's dismissal.

At the court hearing Mrs. Seaman explained the purpose of her trip; she said that she and her husband were enrolled in a graduate study program and were visiting special education programs for retarded children in foreign countries and were attending conferences abroad. In addition, Mr. Seaman was scheduled to present a paper at the International Mental Health Conference, and because he was under medication for a high blood pressure condition, she was concerned about his health. The witness testified that because her request for a leave had not been denied by the board, she made a second request from Yokohama, Japan, and was ready to return to the school for the commencement of the school year if she received a negative answer from the district superintendent. The witness denied receiving the form notice regarding the orientation program and said she saw it for the first time when she returned to the United States.

At the conclusion of the hearing, the trial court found that appellant had "wilfully and persistently violated, refused and failed to obey the reasonable

[2]At the trial Bowman conceded that he was under a duty to bring the request to the district board and he failed to do so. He said he spoke only to the interim superintendent who was in charge when the first application was made and did nothing further about it.

regulations prescribed by the governing board of the school district" and that there were sufficient grounds for her dismissal. The judge further found that the district had not misled Mrs. Seaman with respect to the denial of her application for a voluntary leave of absence and was not estopped to dismiss her. It is with these determinations that appellant takes issue.

It is of course clear that there was substantial evidence to support the trial court's findings that the district did not mislead Mrs. Seaman as to her application for a voluntary leave of absence and that her failure to return to the Fair Oaks school for the commencement of the school year was a violation of the governing board's regulations. (*Midway School Dist.* v. *Griffeath*, 29 Cal.2d 13 [172 P.2d 857].) Appellant knew or should have known that September 10, 1969, was the beginning of the teaching period, and although the record supports her testimony that her first request for a leave of absence was not actually denied by the governing board, she knew or should have known that she was required to be at the school at the commencement of the school year unless she had been granted a leave of absence. Also, although appellant testified that she would have returned to the school for the commencement of the school year had she received a negative answer to the letter she wrote from Yokohama, Japan, she had no right to assume that Superintendent Bowman's failure to reply meant that the leave had been granted.

The question, however, is not only whether appellant violated the regulations promulgated by the respondent school district's governing board, but also whether the violation was "persistent"; both the charge lodged against Mrs. Seaman by Superintendent Bowman and the trial court's decision that she could be dismissed by the governing board obviously were based on subdivision (g) of section 13403. This subdivision provides as one of the causes of dismissal of a permanent employee: "Persistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools, by the State Board of Education or by the governing board of the school district employing him."

On this point respondent argues, merely, that each day of appellant's absence was a separate violation of the school board's regulations, and hence that the violation in this case met the "persistent" requirement of subdivision (g) of section 13403. Respondent relies on *Board of Education* v. *Mathews*, 149 Cal.App.2d 265 [308 P.2d 449], for this proposition.

The argument is specious. This is not a case where it is reasonable to say that Mrs. Seaman's absence, by its very duration, amounted to a "per-

sistent" violation of the governing board's rules. (See *Evard* v. *Board of Education,* 64 Cal.App.2d 745 [149 P.2d 413].) Nor can it fairly be said from the evidence presented that the teacher was motivated by an attitude of continuous insubordination. Mrs. Seaman had been employed by the district for a period of eight years, and there is no evidence in the record to prove that she ever violated a school law or regulation of the governing board prior to the incident in question;[3] before leaving on her trip, appellant requested a leave of absence and gave sound academic reasons in support of the request; although the teacher left on her trip with knowledge that the motion to grant her request for a leave of absence had failed to pass for lack of a second, she reasonably could have assumed, as she testified, that the request had not been denied emphatically; appellant made a second request for a leave of absence from Yokohama, Japan, at a time when she could have returned for the commencement of the school year had she received a reply to her letter or a demand that she return.

To hold that Mrs. Seaman was guilty of "persistent" violation of the school board's regulations under the evidence presented in this case, even though the violation resulted in an absence of several school days, is to distort the meaning of the term "persistent," no matter what acceptable definition is used. The word "persistent" is defined by lexicographers as "refusing to relent; continuing, especially in the face of opposition . . . stubborn; persevering . . . constantly repeated." (Webster's New World Dict. (College ed.); see Webster's Third New Internat. Dict.) And in the judicial decisions of this, as well as other states, the word has been interpreted to mean "continuing or constant." (*Buss* v. *J. O. Martin Co.,* 241 Cal.App.2d 123, 134 [50 Cal.Rptr. 206]; *Appeal of Board of School Directors of Cass Township, Schuylkill County,* 151 Pa. Super. 543 [30 A.2d 628, 630]; *In re Hibler,* 37 Wyo. 332 [261 P. 648, 651].)

The case of *Board of Education* v. *Mathews, supra,* 149 Cal.App.2d 265, is distinguishable. In that case there was conclusive evidence of unethical conduct and an attitude of continuing insubordination. The defendant was not only absent for the 10 consecutive school days during the month of October, which absence was the basis of the charges upon which she was dismissed, but the court also found that she was absent without just or legal excuse until the following February. Furthermore, the teacher gave false reasons for absences which were caused mainly by personal and business pursuits. Finally, unlike the instant case, the defendant in the *Mathews*

---

[3]While there were innuendos that appellant may have been guilty of other violations, no evidence was presented as to such violations.

case was repeatedly in contact with school authorities by telegram or telephone and refused to return to her duties, though ordered to do so.

On the other hand, Mrs. Seaman's contention that she was not guilty of "persistent" violation of the school district's regulations finds support in the leading case of *Midway School Dist.* v. *Griffeath, supra,* 29 Cal.2d 13. In that case a school teacher abandoned his classes during the school year to go on a deer hunt in Nevada; he left on Wednesday, September 27, 1954, after placing a note on the principal's desk stating: "On account of coming illness I find it necessary to be absent from school the rest of this week." The teacher did not return to his classes until Friday morning, October 6. Thereafter, he was asked to resign, and when he refused to do so was charged by the district board with (1) unprofessional conduct; (2) dishonesty; and (3) persistent violation of the school laws and regulations. On appeal the Supreme Court upheld the trial court's conclusion that the single violation of the school board's rules did not necessarily show persistence within the purview of subdivision (g) even though it resulted in an absence of several days. In this connection, the court stated: "The Legislature undoubtedly intended that opportunity for correction be available and refrained from providing for dismissal for a single violation of regulations, or until repeated violations could be considered persistent. In *Fresno City H. S. Dist.* v. *De Caristo, supra* (33 Cal.App.2d 666, at p. 675 [92 P.2d 668]), it was said that two absences without leave may not be considered a persistent course of conduct. (See *Fresno City H. S. Dist.* v. *Dillon,* 34 Cal.App.2d 636 [94 P.2d 86]; cf. *Evard* v. *Board of Education,* 64 Cal. App.2d 745 [149 P.2d 413], where the teacher absented herself without leave for a period of seven months.) A teacher who is 'continually insubordinate . . . may seriously affect the discipline in a school, impair its efficiency, and teach children lessons they should not learn.' (*Johnson* v. *Taft School Dist.,* 19 Cal.App.2d 405, 408 [65 P.2d 912].) The emphasis is on 'persistent' and 'continually.' "

██ Respondent argues that the *Midway School Dist.* decision is distinguishable from the present case because in *Midway* the Supreme Court applied the substantial evidence test to uphold the trial court's judgment. Respondent seemingly suggests that because in this case the trial court found that appellant's conduct amounted to a "persistent" violation of the governing board's regulations, we must uphold the decision under the same substantial evidence test even if the result is patently inconsistent.

We do not agree. If we were to distinguish the *Midway School Dist.* opinion on the substantial evidence test alone, we would create an anomaly in the law. It would mean that the term "persistent," as used in subdivision (g) of section 13403, would have a multiplicity of meanings, each depend-

ent upon the individual viewpoint of the trial judge (or tribunal) who hears the evidence. This in turn would create the type of uncertainty an appellate court is designed to eliminate. As Mr. Justice Spence ably pointed out in his dissent, the facts in *Midway* were undisputed, and the issue before the trial judge was one of law, not of fact.[4]

We do not quarrel with respondent's contention that the school district board had the right to adopt rules governing the conduct of its employees and to require the employees to observe the rules. We hold, only, that a single violation of a school board's rules is not of itself cause for the dismissal of a permanent teacher under subdivision (g) of section 13403. The subdivision pertains to unintentional as well as intentional transgressions, and hence the Legislature, apparently to allow opportunity for a correction, has decreed that a single violation is not sufficient to warrant dismissal; "it is the persistent disregard" of school rules that the subdivision is designed to regulate. (*Board of Education* v. *Mathews, supra,* 149 Cal.App.2d 265, 272.)

We have limited our discussion in this case to the only charge which was made against appellant and to the evidence actually presented; we do not consider innuendos as to evidence which conceivably could have been presented by the district. Also, in reversing the judgment, we do not suggest that a single wilful act of disobedience is never cause for the dismissal of a permanent school employee. Common sense, alone, tells us that a blatant defiance of lawful school authority which attacks effective school administration cannot be tolerated; such conduct, obviously, is unprofessional and grounds for dismissal under subdivision (a) of section 13403. However, respondent's counsel made it very clear to the trial judge that Mrs. Seaman was not accused of unprofessional conduct. He told the judge that the only charge against the teacher was "persistent" violation of the governing board's regulations and that the *Mathews* case was authority for the proposition that her absence was "persistent" activity. It is presumably for this reason that the trial judge limited his findings to that single issue.[5] We

---

[4]It is significant that Mr. Justice Spence did not take issue with the trial judge's conclusion that defendant's single act of disobedience did not show persistence as required by the Education Code. His dissent centered on the trial court's conclusion that defendant's conduct in abandoning his class during the school week after giving a false reason for doing so did not constitute unprofessional conduct and dishonesty.

[5]For all the record shows, the trial judge may have believed appellant's testimony that she was under the impression that her request for a leave had not been denied and that she would have returned in time for the commencement of the school year if she had received a negative answer to her second request for a leave of absence, but also realized that under subdivision (g), as interpreted by the *Mathews* case, the teacher's state of mind was immaterial. (*Board of Education* v. *Mathews, supra,* 149 Cal.App.2d 265, 272.)

cannot arrogate unto ourselves the prerogative to judge the credibility of the witnesses, and to weigh the evidence in order to affirm the judgment on the ground that Mrs. Seaman was guilty of unprofessional conduct. The judgment is reversed.

Stone, P. J., and Brown (G. A.), J., concurred.

A petition for a rehearing was denied October 11, 1972, and the following opinion then rendered:

**THE COURT.**—■ Respondent complains because we did not mention the letter appellant's husband wrote to Senator Teale in July 1969, after appellant's first application for a leave of absence was denied in June; in the letter Mr. Seaman stated "Mrs. Seaman, permission or not, intends to attend the conference." Respondent asserts that because Mr. Seaman was appellant's agent, his words were her words and hence appellant's declared intention to attend the conference, when coupled with her second application for a leave of absence, was "unmistakable evidence of 'persistence' as defined in *Buss* v. *J. O. Martin Co.*, 241 Cal.App.2d 123 [50 Cal.Rptr. 206]."

Mr. Seaman did not testify and his statement to Senator Teale, objected to by appellant, was hearsay. Before admitting the letter into evidence the trial judge remarked, "I don't think there has been an agency shown"; the judge admitted the letter "only for the purpose of impeachment." Respondent's argument, therefore, ignores the law and the trial judge's ruling.

Respondent also contends that our opinion is inconsistent with *Board of Education* v. *Swan*, 41 Cal.2d 546 [261 P.2d 261].[1] The *Swan* case, overruled by the Supreme Court on another point, holds merely that certain conduct may constitute more than one ground for the dismissal of a permanent teacher. The Supreme Court, however, did not suggest that a single violation of a school board's regulations, unaccompanied by a continuous attitude of insubordination, is persistent conduct within the ambit of subdivision (g) of section 13403 of the Education Code. On the contrary, the *Swan* opinion makes it very clear that a single act of disobedience, unless accompanied by a continuous attitude of insubordination, if anything, is unprofessional conduct within the purview of subdivision (a) of section 13403.

Respondent's petition for a hearing by the Supreme Court was denied November 22, 1972.

---

[1] See *Bekiaris* v. *Board of Education*, 6 Cal.3d 575, 588 [100 Cal.Rptr. 16, 493 P.2d 480].