BOARD OF EDUCATION, MT. VERNON
SCHOOLS, MT. VERNON,
Missouri, Appellant,

v.

Marybelle SHANK, Respondent.

No. 59650.

Supreme Court of Missouri,
En Banc.

Nov. 8, 1976.

Andrew J. Hager, Jr., Mt. Vernon, Almon H. Maus, Monett, for appellant.

Joseph J. Russell, Cape Girardeau, for amicus curiae.

William A. R. Dalton, Springfield, for respondent.

HOLMAN, Judge.

In this case the appellant, Board of Education, after due notice and hearing terminated the indefinite contract of respondent, Marybelle Shank, a permanent teacher. The action was taken pursuant to § 168.-114(4)[1] for willful and persistent violations of the published regulations of the board relating to corporal punishment.

In accordance with the provisions of § 168.120 Mrs. Shank appealed from the decision of the board to the circuit court. That court reversed the decision, restored respondent to her position as a permanent teacher and ordered that she receive compensation during the time she was suspended from work.

■ The board duly appealed to the court of appeals, Springfield district. That court adopted an opinion (with one judge dissenting) which affirmed the judgment of the trial court. Upon petition of the board we ordered the case transferred to this court. It will be decided here the same as if it had been originally appealed to this court. Art. V, Sec. 10, Mo.Const. We granted transfer because we were convinced that the majority opinion did not properly follow the rules governing review of an administrative decision. We reverse and remand.

The procedure for terminating the contract of a permanent teacher is specified in detail in §§ 168.114, 168.116, 168.118 and 168.120. At this point we are particularly interested in the fact that § 168.120(2) provides that the appeal from the decision of the board shall be governed by the provisions of Chapter 536, which relates to administrative review. Section 536.140 details the scope of judicial review in such cases.

It is not disputed that Mrs. Shank had knowledge of the published regulation which provides that: "Corporal punishment shall be used only as a last resort after other corrective measures have been used without success. The following should be observed when administering corporal punishment:

"1. The punishment shall be administered by the principal or a teacher designated by the principal.

"2. The punishment shall be witnessed by at least one additional adult.

"3. The punishment shall be reasonable as to nature and amount, and shall not be of such nature as to leave permanent marks or permanent ill effects."

---

1. All statutory references are to RSMo 1969, V.A.M.S.

Mrs. Shank was charged with violating the regulation in the following instances. In January, 1972, she struck Mark Freeman about his face; in February, 1973, she struck Stanley Harris, Charles Gibson, and Douglas Wilks about their heads and shoulders; and in December, 1973, she struck John Patton about his buttocks.

Respondent had been a teacher for 17 years and had taught grade school music in the Mt. Vernon schools for 11 years. The formal charges filed in this case were signed by the superintendent of schools. A formal hearing was held before the board at which both sides were represented by counsel. Considerable testimony was taken as indicated by the transcript of almost 200 pages.

We need not state the evidence in detail. However, a summary of the facts and developments as indicated by the testimony of the witnesses produced by the superintendent is as follows: In January, 1972, respondent grabbed Mark Freeman and slapped him in the face. Paul Maple, the elementary principal thereafter discussed with her the board's policy and the importance of observing it. He advised her that neither he nor the board would tolerate such conduct. Mrs. Shank slapped the faces of Stanley Harris, Charles Gibson and Douglas Wilks in February, 1973. Shortly thereafter a conference was held which was attended by Principal Maple, some of the parents, Superintendent Ford and Mrs. Shank at which there was a discussion of the slapping incident involving the three boys mentioned. Mr. Maple again advised respondent of "the importance of observing the printed rules and regulations." On April 6, 1973, the superintendent wrote a letter to respondent telling her, among other things, that there was need for improvement from her in the area of "careful consideration of published policies." About a month later the superintendent wrote a letter to respondent in which he said, "You should in every case seek the assistance of your principal where discipline cases involve physical contact with the student or any form of corporal punishment."

On December 13, 1973, Mrs. Shank spanked John Patton, hitting him upon the buttocks four or five times. He had tears in his eyes when he went to the principal's office and at that time was "in a hysterical condition." At the same time Mrs. Shank struck Keven Dougherty. Thereafter, these incidents were discussed with respondent by then Principal Tipling and respondent stated to him that she thought the board's policy was unjust and "I know that you would have done the same thing and I would do it again if I had to."

The evidence indicated that no adult witnessed any of the above described incidents other than respondent, nor was there any testimony that respondent had been designated by the principal to administer the punishment.

Mrs. Shank testified in the case. She denied that she slapped Mark Freeman, Stanley Harris, Charles Gibson or Douglas Wilks. She admitted that she swatted Patton twice upon the buttocks but explained that she did that in order to hasten his removal from a position which she considered dangerous.

The decision of the board was unanimous. It made detailed findings of fact. We do not consider it necessary or advisable to incorporate those findings into this opinion. It is sufficient to state that the board made findings in accordance with the testimony produced by the superintendent. It specifically found that those witnesses were credible and were telling the truth. The findings further indicated that the board did not believe the testimony of respondent. The board concluded that respondent had willfully and persistently violated and failed to obey the published regulation of the board and that it was to the best interest of the school district that her contract be terminated which was accordingly ordered.

 In a recent case similar to the one before us it was well stated that, "In reviewing an administrative decision on evidentiary grounds, the court considers all evidence before the board, but its inquiry is limited. The reviewing court may only de-

termine whether the board could reasonably have made its findings and reached its result or whether the decision was clearly contrary to the overwhelming weight of the evidence. *Blunt v. Parker*, 495 S.W.2d 708, 712 (Mo.App.1973). The court may not substitute its judgment on the evidence and may not set aside the board's decision unless it is not supported by competent and substantial evidence on the whole record. In addition, the evidence must be considered in a light most favorable to the board's decision, together with all reasonable inferences which support it. *Harrod v. Board of Education, City of St. Louis*, 500 S.W.2d 1, 6 (Mo.App.1973). If evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding. *Hanebrink v. Parker*, 506 S.W.2d 455, 458 (Mo.App.1974). Also the determination of the credibility of the witnesses is a function of the administrative tribunal. *Hanebrink v. Parker*, supra, 458." *Merideth v. Board of Ed. of Rockwood R–6 Sch. Dist.*, 513 S.W.2d 740, 745 (Mo.App. 1974).

When the testimony before the board is considered in light of the principles stated in *Merideth* we think the conclusion is inescapable that the board could reasonably have made the indicated findings and reached the result it did.

Counsel for respondent have briefed two contentions which they say support the decision of the circuit court. The first is that the regulation when properly interpreted permits a teacher to administer reasonable corporal punishment "as a last resort after other corrective measures have been used without success." They say the three prohibitions are directory only. It is true that the sentence preceding those prohibitions uses the word "should." However, each of the three subdivisions of the regulation use the word "shall" in designating the manner in which the punishment should be administered When considered as a whole we think the regulation must be said to be mandatory. The case relied on by respondent, *Lynch v. Webb City School District No. 92*, 418 S.W.2d 608[7] (Mo.App.1967), has no application to the situation before us.

The second contention is that respondent's conduct was not a willful and persistent violation of the regulation. In that connection it should be noted that the statute uses the words "willful *or* persistent violation of, *or* failure to obey . . . the published regulations." (emphasis ours). It would therefore seem that conduct which was either willful or persistent or a failure to obey would be sufficient to constitute a violation. Regardless of that, however, we have the view that respondent's conduct in administering punishment in a manner prohibited by the regulation to five children on three different occasions over a period of two years was both willful and persistent.

"Willful" has been defined as "done deliberately; not accidental or without purpose; intentional" and "persistent" as "continuing in a course of action without regard to opposition." Webster's Third New International Dictionary. Certainly it may reasonably be concluded that respondent intended to do the acts heretofore recited and that such acts were not accidental. The board could also reasonably have concluded that the repeated incidents indicate a stubborn continuance of conduct which was in opposition both to the regulation itself and the admonitions of the principal and superintendent. The cases of *Board of School Dir. of Cass Township, Schuykill Co.*, 151 Pa.Super. 543, 30 A.2d 628 (1943) and *Oakdale Union School District v. Seaman*, 28 Cal. App.3d 77, 104 Cal.Rptr. 64 (Cal.App.1972) cited by respondent do not support a contrary conclusion. For example, *Oakdale* simply holds that a single violation of the board's rules did not constitute a persistent violation thereof.

As indicated by the foregoing we rule that the trial court erred in concluding that the decision of the board of education should be reversed.

Accordingly, the judgment of the trial court is reversed and the cause remanded with directions to enter a judgment affirming the decision and order of the appellant, Board of Education.

All concur.