[Civ. No. 24533. Fourth Dist., Div. One. Aug. 23, 1982.]

SAN DIEGUITO UNION HIGH SCHOOL DISTRICT, Plaintiff and Respondent, v.
COMMISSION ON PROFESSIONAL COMPETENCE, Defendant and Respondent;
GRETCHEN HARRIS, Real Party in Interest and Appellant.

**COUNSEL**

David H. Askey for Real Party in Interest and Appellant.

Paterson and Taggart, Lee T. Paterson and Mary Jo McGrath for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

**OPINION**

**STANIFORTH, J.**—Gretchen Harris appeals from a superior court judgment which granted the San Dieguito Union High School District's

(District) petition for a writ of mandate to set aside a decision of the Commission on Professional Competence (Commission)[1] declaring the District lacked cause to dismiss Harris from her position as a certificated public school teacher for the District. The superior court reached a contrary conclusion, ordered the Commission to discharge Harris and required repayment of attorney fees. Harris appeals.

## FACTS

Harris taught Spanish and English as a permanent certificated employee of the District. Beginning in 1976 she was absent intermittently from her teaching duties due to various serious illnesses of her young son, her mother and herself. Harris' absences totaled some 21 percent of all work days for the preceding four school years: 22 days in 1976-1977; 54 days in 1977-1978; 38 1/2 days in 1978-1979; 33 1/2 days in 1979-1980. The parties stipulated at the hearing before the Commission and on the record on appeal these absences were "for reasons considered legitimate under District policy."

On May 8, 1980, the Governing Board of the District gave Harris written notice of dismissal after it had found by a majority vote that cause existed for her dismissal under Education Code section 44932, subdivision (e) (evident unfitness for service) and section 44932, subdivision (g) (persistent violation of or refusal to obey "school laws or reasonable regulations").

At Harris' request a four-day evidentiary hearing was held before the Commission. (Ed. Code, § 44944, subd. (b).) There was little dispute over the facts of Harris' absences. The conflict arose over the effect of the absences and Harris' alleged violation of the rules governing preparation and provision of lesson plans for substitute teachers. Harris' supervisors, testifying for the District, said the absences had a disruptive effect on the students. Two substitute teachers out of sixteen who had filled in for Harris said they could not find lesson plans on Harris' desk when they substituted for her. One of the substitutes (Oversmith)

---

[1]Education Code section 44944, subdivision (b), provides for the appointment of a three-member Commission on Professional Competence to conduct a hearing to determine whether cause exists for a school district to dismiss a public school employee. The State Office of Administrative Procedure appoints one member, a hearing officer who chairs the hearing; the Governing Board of the District selects a second member; and the employee chooses a third. The latter two members must hold currently valid teaching credentials and must have at least five years' experience in employee disciplinary matters within the last ten years.

said Harris' lesson plans were provided only three or four times of the seventeen times she substituted.

Beginning in 1977 Harris received numerous written and oral warnings from her superiors of the negative effects of her absences. Harris testified she had not noticed any problems with the students due to her absences and said she had always provided lessons for substitutes as required by school policy. She admitted her plans were sometimes not received by the substitutes but this was due to a breakdown in the District's system of substitute teacher preparation. Harris stated she had never received complaints upon her return to school about the missing lesson plans. Harris said the frequent illnesses in her family appeared to be over and she did not anticipate further difficulty in her attendance at school.

Several fellow teachers were called as her witnesses. One coworker testified he had excessive absences over the past several years due to family illnesses and had not received memos from the administration nor had termination proceedings been initiated against him. Other witnesses testified substitute teachers could, if properly qualified, carry on proper classroom continuity and Harris' teaching performance was satisfactory. The Commission unanimously decided cause for dismissal was not established. The Commission recommended the District hire a stand-in substitute in case of further absences by Harris and ordered payment of her attorney fees. (Ed. Code, § 44944, subd. (e).) The District petitioned the superior court for a writ of mandate to set aside the Commission's decision. The superior court judge disagreed with the Commission and found that the District did have cause for dismissal. This determination was made upon the identical factual base used by the Commission.

## DISCUSSION

The decision of the Commission may be challenged in the superior court by means of a petition for writ of mandate. (Ed. Code, § 44945; Code Civ. Proc., § 1094.5.) ▆▆ In reviewing a Commission's decision for either the governing board or the employee the superior court shall exercise its independent judgment on the evidence. (Ed. Code, § 44945.) An appellate court must sustain the superior court's finding if supported by substantial evidence. (*Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53].)

I

The first ground for Harris' dismissal was "evident unfitness" for service. ■ The applicable standard or determinative test in a teacher discharge case is whether the person is fit to teach. (*Board of Education* v. *Commission on Professional Competence* (1980) 102 Cal.App. 3d 555, 560 [162 Cal.Rptr. 590].) Fitness to teach is probably a question of ultimate fact. (See *Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 698, fn. 3 [139 Cal.Rptr. 700, 566 P.2d 602].) In *Board of Education* v. *Jack M., supra,* the Supreme Court delineates the process for determining fitness. This objective and analytical approach to determining fitness to teach was first enunciated in *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375], where it was held that a discharged teacher is entitled to a fitness hearing. The hearing reviews the teacher's conduct *and* several factors: (1) likelihood of recurrence of the questioned conduct; (2) extenuating or aggravating circumstances; (3) effect of notoriety and publicity; (4) impairment of teacher-student relationships; (5) disruption of the education process; (6) motive; and (7) proximity or remoteness in time of conduct.

*Morrison* discussed (at p. 235) fitness to teach in the context of credential revocation: "[A]n individual can be removed from the teaching profession only upon a showing that his retention in the profession poses a significant danger of harm to either students, school employees, or others who might be affected by his actions as a teacher." In *Oakland Unified Sch. Dist.* v. *Olicker* (1972) 25 Cal.App.3d 1098, 1108 [102 Cal.Rptr. 421], the appeal court said: "We observe, moreover, that the term 'evident unfitness for service' should not be given a definite technical meaning and that a court should not arbitrarily find that it is subsumed under some set formula. [Citation.] In applying the standard due consideration must be given to the circumstances of the case at hand. [Citation.]"

*Morrison* is followed by the California courts for good reason. In the absence of a consideration of all the evidence and a reflection of the factual base on which to apply the *Morrison* standards, the trial court's finding becomes little more than an abstract moral judgment. For example, the *Morrison* court said: "In using [the terms 'immoral or unprofessional conduct'] the Legislature surely did not mean to endow the employing agency with the power to dismiss any employee whose personal private conduct incurred its disapproval." (*Morrison, supra,* 1

Cal.3d at p. 225.) Without the *Morrison* standards "evident unfitness to teach" would be vulnerable to such a broad application virtually every teacher in the state could be subject to discipline and discharge. (*Ibid.*)

■ In *Board of Trustees* v. *Judge* (1975) 50 Cal.App.3d 920, 929 [123 Cal.Rptr. 830], it was said: "There must be a nexus between the teacher's conduct and his usefulness to the school district." And as was said in *Hostetter* v. *Alderson*, 38 Cal.2d 499, 504, "personal fault [of the absent public employee] does not appear to be the primary consideration [in a discharge decision]." Rather, the absences are important only insofar as they affect the efficiency of the department.

In *Rankins* v. *Commission on Professional Competence* (1979) 24 Cal.3d 167 [154 Cal.Rptr. 907, 593 P.2d 852], Byars had been discharged for excessive absences. When he was absent, his class was taught by a substitute teacher for whom he had prepared a detailed lesson plan and the same substitute was employed in most absences. The commission found that none of his absences had a substantial detrimental effect on the educational program and the district's denial of his request for permission to be absent together with its threats of discharge interfered with his free exercise of religion. The Supreme Court said: "Accordingly the merits of the district's claim of undue hardship must turn on whether substantial evidence supports the trial court's finding, contrary to that of the commission, that Byars' absences and his replacement by substitutes had a substantial detrimental effect on the educational program of the district.... Though there is evidence that instruction by a regular teacher is generally preferable to instruction by a substitute, such evidence falls short of showing that Byars' absences for five to ten holy days a year imposed a hardship sufficiently severe to warrant disqualifying him from employment as a teacher. By statute each teacher is allowed at least 10 days of paid leave each year for illness or 'personal necessity.' (Ed. Code, §§ 44978, 44981.)" (*Id.*, at p. 175.)

Particularly enlightening is *Stewart* v. *Board of Ed. of Ritenour, etc.* (Mo. 1978) 574 S.W.2d 471, in which a teacher was absent for 124 days before March 20 during the 1973-1974 school year. The district allowed teachers to accumulate up to 180 days of sick leave but the teacher exceeded her accumulated sick leave by 28.5 days. The court pointed out numbers alone did not establish the absences were excessive. "This is true in spite of the fact that substitute teachers had to be

hired to take her place, a condition which was certainly foreseeable when the board adopted its liberal, open-ended policy." (*Id.*, at p. 474.) The court said: "The board, under the law and its own policy, cannot here be sustained in its conclusion that Miss Stewart's absences were excessive on the strength of their duration alone." Thus *Ritenour* considers whether absences are reasonable or unreasonable when defining excessive.

Finally in *Governing Board of the Oakdale Union School Dist.* v. *Seaman* (1972) 28 Cal.App.3d 77 [104 Cal.Rptr. 64, 104 Cal.Rptr. 527], the appellate court found the teacher's unauthorized absence for one month did not constitute a persistent violation of school laws and regulations although the teacher took the absence without approval of the school board. The court stated: "This is not a case where it is reasonable to say that Mrs. Seaman's absence, by its very duration, amounted to a 'persistent' violation of the governing board's rules. [Citation.] Nor can it fairly be said from the evidence presented that the teacher was motivated by an attitude of continuous insubordination." (*Id.*, at pp. 81-82.)

■ In the present case the trial court concluded Harris' absences were of such frequency and nature as to show evident unfitness pursuant to Education Code section 44932, subdivision (e). This conclusion rests upon this nonsupportive base: Harris' absences were stipulated to be "for reasons considered legitimate under District policy." Her absences consisted of sick leave, personal leave and leave without pay and other recognized categories of legitimate absence. The trial court was presented with undisputed facts the absences upon which the District formed the basis for removal were considered legitimate.

Second, the trial court's conclusion Harris be dismissed as "unfit to teach" did not result from an evaluation of Harris' conduct in light of the seven *Morrison* criteria. In determining unfitness the trial court must conduct a careful and reasoned inquiry and base its decision on all of the evidence, not a single act alone. (*Board of Education* v. *Commission on Professional Competence, supra*, 102 Cal.App.3d 555, 561.) The trial court considered only the frequency and duration of Harris' absences, failed to consider all of the evidence presented to the Commission, and did not analyze the various factors suggested by *Morrison* for determining fitness. The uncontradicted evidence is that Harris is a satisfactory teacher.

The District by its stipulation has precluded the charge that Harris' absences are unreasonable. Here the District stipulated the policy regarding absences had not been violated. The District did in fact deduct from Harris' pay after she had used up her sick leave. The school system assumes a teacher will on occasion be absent and provides for competent substitutes.

## II

The trial court further erred in its reliance upon inappropriate case law in determining Harris was unfit to teach. The trial court relied upon the authorities cited in 78 A.L.R.3d 117 for support of its conclusion of unfitness. However, this article deals with *unauthorized* absences which usually involve wilfulness and defiance of school rules and policies. Here Harris' absences were legitimate under District policy and could not therefore be wilful, defiant or unauthorized. (See also *United States* v. *Coffeeville Consolidated School Dist.* 365 F.Supp. 990, relied upon by the trial court, where the absences were without reason and the dismissal was for wilful violation of the rules.) In light of the concession by the board that Harris' absences were authorized without evidence of the necessary nexus between the absences and unfitness the trial court's ultimate finding of fact—unfitness to teach—is not supported by substantial evidence.

## III

The trial court also found Harris guilty of persistent violation of, or refusal to obey, the rules of the District by not preparing adequate and timely lesson plans for substitute teachers. Two of sixteen substitutes complained of this lack. In the cases where a teacher has been dismissed for persistent failure to obey rules the acts have been clearly wilful.

Here the factual basis underlying the charge of failure to submit lesson plans for substitute teachers does not demonstrate wilfulness as a matter of law. Harris offered lengthy explanations about the difficulty of submitting lesson plans when suddenly her illness or that of her family prevented notification in advance or preparation for such contingencies. Without question a persistent refusal to prepare lesson plans for substitute teachers, viewed in light of the number of absences Harris was experiencing, might be sufficient to constitute "persistent violation ... of school rules" within the meaning of Education Code section

44932, subdivision (g). (See *Governing Board of the Oakdale Union School Dist.* v. *Seaman, supra*, 28 Cal.App.3d 77, 82-83; *Evard* v. *Board of Education* (1944) 64 Cal.App.2d 745 [149 P.2d 413]; *Buss* v. *J. O. Martin Co.* (1966) 241 Cal.App.2d 123, 134 [50 Cal.Rptr. 206]; *Midway School Dist.* v. *Griffeath* (1946) 29 Cal.2d 13 [172 P.2d 857], for decisions defining the term "persistent" in the teacher discharge context.)

The findings show the trial court relied solely upon the number of absences to constitute unfitness. This conclusion is demonstrably incorrect, yet we are unable on this record to say as matter of law that Harris' failure to prepare lesson plans was not a ground for discharge under the statute and judicial interpretation of the critical language; therefore remand for further proceedings on this issue is required.

IV

Upon remand these premises must be established to avoid future error. The basic defect in the first charge was the trial court's failure to consider all the evidence and to establish a factual nexus between Harris' absences and unfitness to teach. So also must a persistent failure to supply lesson plans be connected by the evidence to, and warrant the ultimate conclusion of, unfitness to teach.

 The Commission is a legislatively mandated professional body, with experience and expertise in the area of determining fitness to teach. This body, including one member appointed by the board and one neutral member, determined after an extensive factual hearing with an opportunity to see, hear and evaluate the veracity of the witnesses that cause was not established to discharge Harris on either of the two grounds asserted. Such factual finding is entitled to substantial weight even in an "independent judgment" hearing before the superior court.

Finally, the trial court's conclusions of unfitness must be based upon an objective standard such as that articulated in *Morrison*. The *Morrison* standard gives substance to the tenured teacher's right to be discharged only for cause. If the *Morrison* standards are not applied, the teacher is left essentially at the mercy of the Board (or the trial court) to be discharged whenever cause exists in the subjective estimation of either body. Such a procedure would make a shambles out of the tenure and job security now enjoyed by teaching employees.

Judgment reversed and the order for reimbursement of attorney fees is vacated; the cause is remanded for further proceedings conformable to this opinion.

Cologne, Acting P. J., and Work, J., concurred.

A petition for a rehearing was denied September 16, 1982.