[Civ. No. 6622. Fifth Dist. June 20, 1983.]

CALIFORNIA TEACHERS ASSOCIATION et al.,
Plaintiffs and Appellants, v.
GOVERNING BOARD OF THE LIVINGSTON UNION SCHOOL
DISTRICT et al., Defendants and Respondents.

**COUNSEL**

Tuttle & Tuttle, Ernest H. Tuttle III and Kay M. Tuttle for Plaintiffs and Appellants.

Mary Louise Frampton as Amicus Curiae on behalf of Plaintiffs and Appellants.

Atkinson, Andelson, Loya, Ruud & Romo, Paul M. Loya and Brian M. Libow for Defendants and Respondents.

**OPINION**

**HAMLIN, J.**—Plaintiffs, California Teachers Association (CTA) and Mitsue Takahashi, appeal from the trial court's judgment which denied a writ of mandate commanding defendants, the Governing Board of the Livingston Union School District, the Commission on Professional Competence of the Livingston Union School District and the Livingston Union School District

(district) to set aside their decision terminating the district's employment of Takahashi, a permanent certificated schoolteacher. We affirm the judgment.

The principal issue on appeal is whether the district's failure to adopt uniform objective guidelines for evaluation and assessment of the classroom management performance of all its certificated personnel, pursuant to Education Code section 44660[1] et seq. (the Stull Act)[2] precludes it from giving to the affected employee a valid 90-day written notice of charges of incompetency as required by section 44938.[3]

### STATEMENT OF FACTS

Mitsue Takahashi was an eighth grade teacher at Selma Herndon School in the Livingston Union School District in Livingston, California. She had been employed by the district, at the time of the hearing before the commission on professional competence, for a period of 21 years. On five occasions, during the period from January 9, 1978, through May 16, 1979, Dale Eastlee, principal at Selma Herndon School, observed discipline problems in the classroom of Takahashi. These problems included students fighting, playing soccer in the classroom, yelling over the school intercom, yelling out the back door of the classroom, wrestling, throwing pencils and other disruptive activities. Additionally, a maintenance worker who was

---

[1]Section 44660 provides as follows: "It is the intent of the Legislature that governing boards establish a uniform system of evaluation and assessment of the performance of all certificated personnel within each school district of the state, including schools conducted or maintained by county superintendents of education. The system shall involve the development and adoption by each school district of objective evaluation and assessment guidelines which may, at the discretion of the governing board, be uniform throughout the district or, for compelling reasons, be individually developed for territories or schools within the district, provided that all certificated personnel of the district shall be subject to a system of evaluation and assessment adopted pursuant to this article.

"This article does not apply to certificated personnel who are employed on an hourly basis in adult education classes."

All statutory references are to the Education Code unless otherwise specified.

[2]Statutes 1971, chapter 361, section 40, page 726.

[3]Section 44938 provides as follows: "The governing board of any school district shall not act upon any charges of unprofessional conduct or incompetency unless during the preceding term or half school year prior to the date of the filing of the charge, and at least 90 days prior to the date of the filing, the board or its authorized representative has given the employee against whom the charge is filed, written notice of the unprofessional conduct or incompetency, specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his faults and overcome the grounds for such charge. The written notice shall include the evaluation made pursuant to Article 11 (commencing with Section 44660) of Chapter 3 of this part, if applicable to the employee. 'Unprofessional conduct' and 'incompetency' as used in this section means, and refers only to, the unprofessional conduct and incompetency particularly specified as a cause for dismissal in Sections 44932 and 44933 and does not include any other cause for dismissal specified in Section 44932."

working in Takahashi's classroom on May 8, 1978, overheard students using vulgar language. He did not hear Takahashi take any action to terminate use of that language or to caution against recurrence.

In August 1979, Hamilton Brannan became principal at Selma Herndon School. He observed Takahashi's classroom on six occasions between September 26, 1979, and March 20, 1980. Each time, he noted a lack of planning and focus in Takahashi's teaching. He once heard a student screaming at Takahashi for so long with no response from Takahashi that he was forced to remove the student from the classroom. He observed students engaging in a tug-of-war over some tape, which Takahashi was unable to stop, and students disregarding Takahashi's instructions on classroom demeanor in shouting out questions and answers. On April 15, 1980, at the request of Brannan, a principal at a school in a neighboring district observed Takahashi's classroom performance. That person, from outside the district, noted that Takahashi's questions to the class prompted loud and confusing total group responses, that she failed to draw any response from the quieter students, and that she ignored inappropriate student behavior which resulted in an unorderly classroom environment. Twice during the 1979-1980 school year students were transferred out of Takahashi's class at the request of the students' parents. The reasons stated for the transfer were disorder and lack of discipline in the classroom which interfered with the students' learning.

On January 8, 1980, the superintendent of the district handed Takahashi a letter over his signature notifying her of specified acts of incompetency. Appended to that letter were a formal evaluation form dated November 15, 1979, prepared by Brannan, a copy of a letter from the superintendent to Takahashi dated April 23, 1979, also notifying her of specified acts of incompetency, and a copy of a formal evaluation form prepared by Dale Eastlee, dated April 18, 1979. Later, a notice of accusation, dated June 26, 1980, was served upon Takahashi. Appended to that notice was an accusation filed with the governing board of the district alleging that cause existed to dismiss Takahashi. Takahashi demanded and received a hearing before the commission on professional competence (commission) of the district, Rudolph H. Michael, administrative law judge, presiding. On November 6, 1980, the commission issued its decision containing findings of fact and determining, among other things, that cause for dismissing Takahashi had been established and that the notice given to her on January 8, 1980, complied with the procedural requirements of section 44938.

Takahashi commenced a proceeding in mandamus (Code Civ. Proc., § 1094.5) to compel the commission to set aside its decision. In that proceeding, the trial court found as follows: (1) cause for dismissal had been

established, (2) each of the notices which the district gave Takahashi complied with the procedural requirements of section 44938 and the evaluations attached to those notices complied with section 44660 et seq. and (3) Takahashi's alteration of her testimony before the commission constituted unclean hands.

## DISCUSSION

### *Jurisdiction to Act Upon the Accusation of Incompetency*

Initially, we note that the trial court's determination that the notice given to Takahashi on January 8, 1980, complied with the procedural requirements of section 44938 necessarily involves interpretation of the statute. Such interpretation is a question of law, and an appellate court is not bound by evidence presented in the trial court. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) ■ In construing a statute, the fundamental rule is that the appellate court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].) To ascertain such intent the court first looks to the words themselves for the answer. (*Ibid.*) Moreover, the court is required to give effect to statutes according to the usual, ordinary import of the language employed in framing them. (*Id.,* at pp. 658-659.) The various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (*Id.,* at p. 659.)

■ Applying these rules to interpret the Stull Act, we begin with section 44660. That section expresses the intent of the Legislature that governing boards ". . . establish a uniform system of evaluation and assessment of the performance of all certificated personnel . . . . The system shall involve the development and adoption . . . of objective evaluation and assessment guidelines . . . ." Nowhere in section 44660 is there any statement about the consequence to the district of the governing board's failure to establish such a system or to adopt such guidelines. Neither do we find in other sections of the Stull Act a statement that any disability or consequence flows from the failure to adopt guidelines for evaluation and assessment of the performance of certificated employees.

We do find in section 44932 specific provisions which limit the causes for dismissal of permanent employees. One of the causes for dismissal is "incompetency" (§ 44932, subd. (d)). In the second paragraph of section 44934 appears the requirement that "Any written statement of charges of

. . . incompetency shall specify instances of behavior and the acts or omissions constituting the charge so that the teacher will be able to prepare his defense. It shall . . . also set forth the facts relevant to each occasion of alleged . . . incompetency." Section 44938 provides additional requirements which must be satisfied before the governing board of any school district may act upon any charges of incompetency. These provisions include the requirement that the written notice shall include the evaluation made pursuant to section 44660 et seq.

Plaintiffs do not contend that incompetency is not a proper cause for dismissal of Takahashi. Neither do they urge any procedural deficiency in the contents of the notices of incompetency under the statutory provisions reviewed above. Their sole contention is that the Stull Act evaluation appended to the notice of incompetency given to Takahashi on January 8, 1980, does not satisfy the requirement of section 44938 that the evaluation be made pursuant to section 44660 et seq. Plaintiffs argue the evaluation could not have been made as required in the absence of the guidelines mandated by section 44660.

In *Tarquin v. Commission on Professional Competence* (1978) 84 Cal.App.3d 251 [148 Cal.Rptr. 522], the court addressed the issue of compliance with section 13407. That section is identical with section 44938 of the Reorganized Education Code (Stats. 1976, ch. 1010, as amended by ch. 1011, eff. Apr. 30, 1977). The court concluded that the district did not comply with section 13407 for several reasons. One reason was the district's failure to comply with section 13489 (now § 44664) by not giving the teacher an evaluation of his performance during the school year in which he was given notice of his alleged incompetency. The district was, therefore, without jurisdiction to proceed on the charges of incompetency. (*Id.*, at pp. 258-259.)

Plaintiffs do not dispute the fact that an evaluation of Takahashi's performance accompanied each of the notices of incompetency. In the notices, the district described the attached evaluations as having been made pursuant to section 44660 et seq. We believe the evaluations which the district attached to the notices of incompetency to Takahashi complied with the provisions of section 44664. They were provided within the time limits specified in that section. In addition, they included recommendations as to areas of improvement in the performance of Takahashi as required by that section. They also contained a notice to Takahashi in writing that she was not performing her duties in a satisfactory manner and they described such unsatisfactory performance. Finally, the evaluators conferred with Takahashi after the evaluations and made specific recommendations as to areas of improvement in her performance. They also provided assistance to her in

improving her performance. This assistance included provision of textbooks and a course of instruction on improving classroom discipline and control and visits to other classrooms.

We find nothing in the *Tarquin* decision to support a conclusion that the district lacked jurisdiction to proceed on the charges of incompetency against Takahashi. Neither do we believe it is logical or reasonable to conclude that it was the intent of the Stull Act that such be the consequence of failure of the district's governing board to adopt guidelines for assessing teacher incompetency. The numerous safeguards which the framers of that legislation included to assure full and complete due process in any attempted dismissal are inconsistent with such an intent. The requirement of a full statement of the charges and a specification of the acts, omissions and facts relevant to each occasion of alleged incompetency are but a few of these safeguards. Additionally, we note the provisions of section 44944 governing the conduct of the hearing by the commission on professional competence on the charges against the teacher and governing the composition of the commission. The two members selected by the governing board and the teacher must hold a currently valid credential and "have at least five years' experience within the past ten years in the discipline of the employee." (§ 44944, subd. (b).)

One final consideration arising from the particular nature of the charged incompetency in the present case convinces us that the Legislature never intended that failure to adopt the uniform written guidelines called for by section 44660 result in a wholesale jurisdictional bar to the dismissal of incompetent employees. The essence of the charge against Takahashi was that she was unable to maintain an orderly classroom.[4] Maintenance of appropriate classroom behavior is extremely difficult to quantify; one can imagine (with horror) uniform guidelines framed in terms of permissible decibel levels or schedules of acceptable incidents of misbehavior per unit of time or student population. The lack of empirical standards applicable to this area of teacher competence mandates that evaluation of teacher performance be left to those with the professional experience and skill to meaningfully assess classroom order—fellow educators assisted by a judicial officer, as is contemplated by section 44944.

---

[4]It is undisputed that Takahashi's students met the academic standards appropriate to measure the skill with which she imparted information relevant to the subjects she covered. We view as no less important than academic knowledge the teaching of standards of civilized behavior necessary to the functioning of society. Order and discipline should never be exalted to the detriment of learning or of the concepts basic to a free society, but neither should appropriate group behavior be discarded as irrelevant to the educational process. A school which produced well-educated sociopaths would be as inimical to democracy as one which created well-educated robots.

The only extrinsic aid to interpretation provided by the briefs is the reference by the amicus curiae to a law review article written by the author of the Stull Act,[5] the legislation which enacted the relevant provisions of the Education Code.

■ In construing a statute, the motives or understandings of individual legislators who cast their vote for it may not be considered as evidence of legislative intent. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589 [128 Cal.Rptr. 427, 546 P.2d 1371].) This rule applies even though the motives offered are those of the author of the legislation being construed. (*Id.,* at pp. 589-590.) A legislator's statement is evidence of legislative intent only if it provides the history of the legislation—events which occurred or arguments made during its passage. (*California Teachers Assn.* v. *San Diego Community College Dist.,* supra, 28 Cal.3d 692, 700; *In re Marriage of Bouquet, supra,* at p. 590.) These standards for consideration of legislators' statements go to admissibility, rather than weight, of the evidence offered. (*California Teachers Assn., supra,* at p. 701.)

Nothing in the article written by Mr. Stull is a reiteration of legislative discussion or events or gives an indication of arguments made during consideration of the statute by the Legislature. Therefore, this court may not consider that article as evidence of the Legislature's intent in enacting the Stull Act.

■ We have discovered only one judicial expression of statutory interpretation relevant to the Education Code sections at issue. That appears in *Certificated Employees Council* v. *Monterey Peninsula Unified Sch. Dist.* (1974) 42 Cal.App.3d 328 [116 Cal.Rptr. 819]. In that case, a school district had adopted the guidelines called for by section 44660, and teachers' unions sought to enjoin application of the guidelines because the district had not consulted with the teacher organizations (but had utilized individual teachers) in formulating the guidelines. (*Id.,* at pp. 331-332.) In holding that the Stull Act was not subject to the "meet and confer" requirements of other legislation, the Court of Appeal stated: "Nor do we think that the Stull Act is exclusively a tenure regulation. As indicated above, in Stull, 'intent of the Legislature [was] to establish a uniform system of evaluation and assessment of the performance of certificated personnel' by requiring 'the development and adoption by each school district of objective evaluation and assessment guidelines' (§ 13485 [recodified as 44660 by Stats. 1976, ch. 1010, § 2, p. 2384]). Stull does not require that school districts use the guidelines for determining tenure *nor does it require any other*

---

[5]Stull, *Why Johnny Can't Read—His Own Diploma* (1979) 10 Pacific L.J. 647.

*consequence. While many school districts will undoubtedly utilize the evaluation and assessment guidelines in making determinations of tenure, in and of itself this fact does not make them tenure regulations."* (*Id.*, at p. 336, italics supplied.)

We interpret the opinion in *Certificated Employees Council* v. *Monterey Peninsula Unified Sch. Dist., supra,* 42 Cal.App.3d 328 to mean that the failure of the district to establish guidelines as required by section 44660 does not have any effect upon the district's powers. Admittedly, that court was not presented with factual circumstances in which any consequences could arise, since the district there had adopted the required guidelines. Nonetheless, we believe an interpretation of sections 44660 and 44938 which entirely prevents the district from dismissing incompetent teachers would not be consonant with that court's view of the Stull Act.

Plaintiffs argue that guidelines are essential to an objective evaluation and that the importance of such an evaluation justifies the consequence they assert in this case. To illustrate the importance of the objective standards, our attention is directed to *San Dieguito Union High School Dist.* v. *Commission on Professional Competence* (1982) 135 Cal.App.3d 278 [185 Cal.Rptr. 203]. We do not find that case material to the resolution of the issue of whether failure to adopt guidelines for assessing teacher incompetency precluded compliance with section 44938 in this case. *San Dieguito* and the cases cited therein uniformly involve causes for dismissal other than incompetency—such as excessive absences, sex offenses, or drug violations. The danger in such situations (where the offense purporting to justify dismissal involves questions of moral turpitude or unfitness to teach) that a lack of objective standards will vest unbridled discretion in the districts and trial courts, is not present where incompetence is alleged and is, as in this case, supported by allegations of specific conduct. The evidence presented to the commission, and upon which the trial court exercised its independent judgment, established that Takahashi received notice of the allegations of incompetence far in advance of the filing of accusations of incompetency; she was provided with suggestions for improvement; and she was given an opportunity to demonstrate improvement in her performance in the relevant particulars. If, as we believe, the Stull Act was intended to encourage regular evaluations and to avoid arbitrary evaluations and dismissals, common sense dictates there was compliance with section 44938 in this case.[6]

---

[6]Our conclusion that failure to adopt uniform written guidelines for evaluation of a teacher's performance in the area of classroom order and discipline does not deprive a school district of jurisdiction to proceed with dismissal for incompetency does not mean that school districts may ignore the mandate of section 44660. We express no opinion as to what remedies may exist to compel school districts to comply with section 44660, but emphasize that a jurisdictional bar to dismissal proceedings for incompetency relating to classroom order and discipline is not one of them.

## Sufficiency of the Evidence

The decision of the commission which the trial court reviewed pursuant to plaintiffs' petition for writ of mandate, found cause for dismissal of a permanent certified employee of the school district. On such a review, the trial court must exercise its independent judgment as to the evidence presented to the commission. (*Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53]; *San Dieguito Union High School Dist.* v. *Commission on Professional Competence, supra,* 135 Cal.App.3d 278, 283.) The trial court applied the independent judgment standard in the present case.

The trial court's judgment must be upheld on appeal if supported by substantial evidence. (*Ibid.*) All conflicts in the evidence must be resolved by the appellate court in favor of the party prevailing in the superior court, and that party must be given the benefit of every reasonable inference in support of the judgment. (*Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence, supra,* 20 Cal.3d at pp. 313-314.) Where the trial court's findings are challenged, based on insufficiency of the evidence, the appellant bears the heavy burden of showing that there is no substantial evidence to support those findings. (*Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1979) 88 Cal.App.3d 823, 829 [152 Cal.Rptr. 98].) The reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) The power of the appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. (*Ibid.*) Substantial evidence means evidence which is of ponderable legal significance—evidence that is reasonable in nature, credible and of solid value. (*H. Russell Taylor's Fire Prevention Service, Inc.* v. *Coca-Cola Bottling Corp.* (1979) 99 Cal.App.3d 711, 726 [160 Cal.Rptr. 411].) As the trier of fact, the trial court is the sole arbiter of all conflicts in the evidence, conflicting interpretations thereof, and conflicting inferences which reasonably may be drawn therefrom; is the sole judge of the credibility of the witnesses; may disbelieve them even though they are uncontradicted if there is any rational ground for so doing, one such reason for disbelief being the interest of the witnesses in the case; and, in the exercise of sound legal discretion, may draw or may refuse to draw inferences reasonably deducible from the evidence. (*Johnson* v. *Pacific Indem. Co.* (1966) 242 Cal.App.2d 878, 880 [52 Cal.Rptr. 76].)

Applying the above rules to the present case, we conclude there was sufficient evidence to support the trial court's decision that "[i]n the aggre-

gate, the events and facts [found by the court to be true] constitute cause for the dismissal of [Takahashi] . . . ."

The judgment of the trial court is affirmed.

Andreen, Acting P. J., and Martin, J., concurred.

A petition for a rehearing was denied July 14, 1983, and the opinion was modified to read as printed above. The petition of appellant Takahashi for a hearing by the Supreme Court was denied August 17, 1983. Bird, C. J., was of the opinion that the petition should be granted.