Filed 5/11/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PACIFIC FERTILITY CASES | A164472<br><br>(San Francisco City & County<br> Super. Ct. No. CJC-19-005021;<br>JCCP No. 5021) |

When one of multiple tortfeasor defendants intends to settle a case before it is resolved against all defendants, the tortfeasor may petition the trial court for a determination that the settlement was made in good faith. (Code Civ. Proc.,[1] § 877.6.)  If the court makes such a determination, the other defendants are barred from obtaining contribution or indemnification from the settling tortfeasor based on the parties' comparative negligence or fault.  (§ 877.6, subd. (c).)  The court's good faith determination is reviewable by writ of mandate.  (§ 877.6, subd. (e).)

In this case, we consider whether such a determination is also reviewable in an appeal brought by a nonsettling defendant.  Respondents Pacific MSO, LLC (Pacific MSO), Prelude Fertility, Inc. (Prelude), Pacific Fertility Center (PFC), Dr. Joseph Conaghan, and individual PFC physicians—a group of defendants that settled the claims against them

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

(settling defendants)—argue that it is not. Appellant Chart Inc. (Chart), a nonsettling defendant, argues that it is. Addressing a split in the Courts of Appeal on the issue, we reaffirm a decades-old decision of this division summarily concluding that a good faith settlement determination is reviewable only by a timely petition for writ of mandate in accordance with section 877.6. (*Housing Group v. Superior Court* (1994) 24 Cal.App.4th 549, 552 (*Housing Group*).) We therefore dismiss the appeal.

## I.

## BACKGROUND

These coordinated proceedings arose following the failure in 2018 of a cryogenic storage tank, which was manufactured by Chart and used by PFC, a San Francisco fertility clinic, to store patients' reproductive material. During the failure, the tank's nitrogen levels dropped, causing the temperature to rise and potentially endangering the eggs and embryos stored inside. PFC patients and others affected by the tank's failure sought recourse, resulting in hundreds of claims in federal and state courts and arbitration proceedings.

A putative class action was first filed in federal court against PFC, Prelude, Pacific MSO, and Chart.[2] (See *In re Pacific Fertility Center Litigation* (N.D.Cal., case No. 3:18-cv-01586) filed May 30, 2018.) As a result of motions to compel arbitration, and an ensuing appeal to the Ninth Circuit Court of Appeals, claims against Chart proceeded in federal court while claims against the remaining defendants proceeded in arbitration. The district court, however, denied the plaintiffs' motion for class certification. As

---

[2] Pacific MSO provides operational services and administrative support to PFC, operating its embryology laboratory and employing PFC's nonphysician staff, including Dr. Conaghan, the embryology lab director. Prelude is a majority stakeholder in Pacific MSO.

2

a result, nearly 150 individual lawsuits against Chart were pending in federal court.

The first federal bellwether trial was conducted in mid-2021, resulting in a jury verdict against Chart.[3]  The jury found that the cryogenic storage tank had a manufacturing defect and failed to perform as safely as expected. It also concluded that the tank's design was a substantial factor in causing harm to the plaintiffs.  The jury apportioned 90 percent of the liability to Chart and 10 percent to PFC.

In the meantime, claimants not involved in the federal litigation filed 60 individual lawsuits in California state courts against PFC, Pacific MSO, Prelude, and Chart, and those lawsuits were coordinated into these proceedings.  Arbitration was compelled for claims against PFC but not the other defendants.  All told, approximately 260 claims were pending in arbitration proceedings.

After 18 months of settlement negotiations and mediation, extensive written discovery, depositions, laboratory inspections, tests on the failed cryogenic storage tank, and additional trials in federal court, the settling defendants reached an agreement to resolve the claims against them in all courts and arbitration proceedings.  The agreement was expressly conditioned on final court approval of the settlement's good faith.  The settling defendants moved for a good faith settlement determination under section 877.6, and the trial court granted the motion in November 2021.  The court also stated that it was dismissing with prejudice "[a]ll existing cross-

---

[3] The primary purpose of a "bellwether" trial is to educate the parties and the court about the strengths and weaknesses of the many underlying cases.  (See 4 Newberg on Class Actions (5th ed. 2021) Selecting the bellwether cases—Generally, § 11:13.)

complaints" for equitable indemnity or contribution against the settling defendants.

In December 2021, Chart filed a petition for writ of mandate in this court to challenge the trial court's good faith settlement determination. The following month, we denied the petition. In April 2022, our state Supreme Court denied Chart's petition for review of our denial of the writ petition. (*Chart Inc. v. Superior Court*, review denied Apr. 13, 2022, S272985.)

Meanwhile, on January 21, 2022, two days after we denied its writ petition, Chart filed a notice of appeal from the order determining the settlement was in good faith. The settling defendants then moved to dismiss the appeal.

## II.

## DISCUSSION

In arguing that the appeal must be dismissed, the settling defendants cite this division's conclusion that "[t]he determination of the good faith of a settlement may only be reviewed by a timely petition for writ of mandate." (*Housing Group*, *supra*, 24 Cal.App.4th at p. 552.) And they point to subsequent appellate decisions agreeing with that conclusion. (See *O'Hearn v. Hillcrest Gym & Fitness Center, Inc.* (2004) 115 Cal.App.4th 491, 499 (*O'Hearn*); *Main Fiber Products, Inc. v. Morgan & Franz Ins. Agency* (1999) 73 Cal.App.4th 1130, 1136 (*Main Fiber*).) Chart, in contrast, cites cases holding that, while a good faith settlement determination *may* be reviewed by writ of mandate in accordance with section 877.6, subdivision (e), it may also be reviewed in an appeal from a final judgment. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*); *Wilshire Ins. Co. v. Tuff Boy Holding, Inc.* (2001) 86 Cal.App.4th 627, 636 (*Tuff Boy*); *Maryland Casualty Co. v. Andreini & Co.* (2001) 81 Cal.App.4th 1413, 1423 (*Maryland*

4

*Casualty*).)[4]  With these conflicting decisions in mind, we carefully reexamine section 877.6, ultimately reaffirming the conclusion we reached in *Housing Group*.[5]

## A.  Legal Framework and Standard of Review

" 'The fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1303 (*Upland*); see also *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387.)  "Because the statutory language is

---

[4] Although the parties do not raise the issue, we question whether the November 2021 order is an appealable order.  " '[I]n a case involving multiple parties, a judgment is final and appealable when it leaves no issues to be determined as to one party.' " (*Heshejin v. Rostami* (2020) 54 Cal.App.5th 984, 991.)  None of the authorities Chart cites held that "a determination of good faith is directly appealable as an interlocutory decree." (*Maryland Casualty*, *supra*, 81 Cal.App.4th at p. 1419, fn. 8 [noting the issue was not before it].)  And Chart does not so argue, meaning the order must qualify as a final judgment to be appealable.  Yet Chart did not appeal from a final judgment resolving the plaintiffs' claims against it, and it is not clear on this record that all plaintiffs have dismissed the settling defendants from this action.  The law is unsettled on whether an order making a good faith settlement determination qualifies as a final judgment when it also dismisses a nonsettling defendant's counterclaims.  (Compare *Cahill*, *supra*, 194 Cal.App.4th at pp. 945 & fn. 3, 946 [considering appeal from an order approving good faith settlement and dismissing nonsettling defendant's cross-complaint for indemnity] with *Oak Springs Villas Homeowners Assn. v. Advanced Truss Systems, Inc.* (2012) 206 Cal.App.4th 1304, 1307 ["The final judgment rule cannot be interpreted to allow a party who remains in the action to base its appeal on an order involving a different party."].)  Ultimately, we need not decide whether the order is appealable as an interlocutory decree or final judgment since we conclude that the good faith determination is reviewable only by a writ petition filed in accordance with section 877.6.

[5] In light of our holding, we need not decide the settling defendants' claim that the appeal must be dismissed because it is frivolous.

5

generally the most reliable indicator of legislative intent, we first examine the words themselves, giving them their usual and ordinary meaning and construing them in context." (*Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 268, superseded by statute on other grounds as stated in *Bernard v. City of Oakland* (2012) 202 Cal.App.4th 1553, 1561 & fn. 5.) "The statute's plain meaning controls the court's interpretation unless its words are ambiguous." (*Green v. State of California* (2007) 42 Cal.4th 254, 260.)

"If the words in the statute do not, by themselves, provide a reliable indicator of legislative intent, '[s]tatutory ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes.' " (*People v. Arias* (2008) 45 Cal.4th 169, 177.)  Moreover, " 'statutes must be construed so as to give a reasonable and common-sense construction consistent with the apparent purpose and intention of the lawmakers—a construction that is practical rather than technical, and will lead to wise policy rather than mischief or absurdity.  [Citation.]  In approaching this task, the courts may consider the consequences which might flow from a particular interpretation and must construe the statute with a view to promoting rather than defeating its general purpose and the policy behind it.' " (*Upland, supra,* 111 Cal.App.4th at p. 1303.)  When " 'the language permits more than one reasonable interpretation, . . . the court looks "to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " (*S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 379.)  Ultimately, " '[i]f a statute is amenable to two alternative interpretations, the one that leads to the *more* reasonable result

6

will be followed.' " (*People v. Cornett* (2012) 53 Cal.4th 1261, 1271, italics added.)

" 'Statutory interpretation is a clear question of law for our determination anew on appeal.' " (*Daugherty v. City and County of San Francisco* (2018) 24 Cal.App.5th 928, 944; *Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1077.)  In addition, we are "dutybound to consider" appealability.  (*Olson v. Cory* (1983) 35 Cal.3d 390, 398.)  If jurisdiction is lacking, we "must dismiss."  (*Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 674.)

The statute at issue here, section 877.6, establishes procedures for determining the good faith of a settlement between a plaintiff and one or more joint tortfeasors in a case involving multiple tortfeasors.  (§ 877.6, subd. (a).)  The party asserting a lack of good faith bears the burden of proof on the issue.  (*Id.*, subd. (d).)  A trial court's determination that a settlement was made in good faith bars "any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."  (*Id.*, subd. (c).)

Addressing appellate review of good faith settlement determinations, subdivision (e) of section 877.6 provides:  "When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate.  The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow."  The appellate court must, "within 30 days of the receipt of all materials to be filed by the parties, determine whether or not the court will hear the writ and

7

notify the parties of its determination." (*Id.*, subd., (e)(1).) Moreover, "[i]f the court grants a hearing on the writ, the hearing shall be given special precedence over all other civil matters on the calendar of the court except those matters to which equal or greater precedence on the calendar is granted by law." (*Id.*, subd. (e)(2).) The time periods for dismissal for want of diligent prosecution are tolled while the writ petition is pending. (*Id.*, subd. (e)(3).)

### B. *The Statutory Language Is Ambiguous*

In support of their varying positions, the parties make several arguments based on the statute's language. Chart contends that section 877.6 does not expressly preclude appellate review and states only that a writ petition "may" be filed, making such review optional rather than mandatory. In contrast, the settling defendants contend that because subdivision (e) of section 877.6 mentions no type of review except review by writ of mandate and sets forth a specific procedure with short deadlines, the statute evinces an intent to supplant other forms of review. None of these contentions are entirely convincing.

To begin with, we reject Chart's argument that the word "may" necessarily makes the section 877.6 writ review procedure nonexclusive. Obviously, no litigant is ever *required* to seek appellate review. The use of "may" simply indicates that litigants have the expedited writ procedure available to them *should they wish to challenge* a trial court's good faith determination. Other courts have concluded as much in similar contexts. (See, e.g., *McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 256, fn. 4 & 257 [holding that the "interlocutory appellate remedy" set forth in former § 416.3—which provided that a defendant "may" petition for a writ of mandate after denial of a motion to quash service of summons—"preclude[d]

8

review of the order upon appeal from a judgment entered after trial on the merits"]; *West v. Arent Fox LLP* (2015) 237 Cal.App.4th 1065, 1071–1072 [§ 425.18, subd. (g)—which states that "[u]pon entry of an order denying a special motion to strike a SLAPPback claim, . . . an aggrieved party *may*, within 20 days after service of a written notice of the entry of the order, petition an appropriate reviewing court for a peremptory writ" (italics added) —held to be the "sole remedy provided for review"].)

On the other hand, it is true that section 877.6 does not expressly state that its articulated writ procedure must be followed in lieu of any subsequent appeal. And the Legislature could easily have made any such intent express. Indeed, it has done so in other statutes. (See, e.g., § 170.3, subd. (d) [providing that "[t]he determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding"]; Gov. Code, § 6259, subd. (c) [providing that a superior court decision in a Public Records Act case "is not a final judgment or order within the meaning of [section 904.1] from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ"]; see also *Tuff Boy*, *supra*, 86 Cal.App.4th at pp. 636–637 [citing § 170.3 to show "that the Legislature knows how to make writ review the exclusive mode of review if it wants to"].)

While we disagree that section 877.6's exclusive reference to review by writ of mandate is definitive evidence precluding a subsequent appeal, we agree that the statute's specificity is some evidence that the Legislature intended the statutory writ remedy to be the only avenue for appellate review. As we have mentioned, under the statute, the petition for writ of mandate must be filed within 20 days of notice of the good faith

determination, a timeframe that can only be extended by the trial court up to an additional 20 days.  (§ 877.6, subd. (e).)  The appellate court must determine within 30 days whether it will hear the writ petition, and if so, the matter "shall be given special precedence over all other civil matters on the calendar of the court except those matters to which equal or greater precedence on the calendar is granted by law." (*Id.*, subd. (e)(1) & (2).)  And the time periods for dismissal for want of diligent prosecution with respect to the underlying action are tolled while the writ petition is pending.  (*Id.*, subd. (e)(3).)  In addition, subdivision (a)(1) of section 877.6 states that "[u]pon a showing of good cause, the court may shorten the time for giving the required notice to permit the determination of the issue [of the good faith of a settlement] to be made before the commencement of the trial of the action, or before the verdict or judgment if settlement is made after the trial has commenced."  All of these provisions support the conclusion that the Legislature wanted to provide settling tortfeasors with a swift and final procedure for reviewing a trial court's good faith settlement determination before the verdict or judgment in the underlying trial.  (See *Main Fiber*, *supra*, 73 Cal.App.4th at p. 1136 [observing that "[t]he Legislature would not have gone to such lengths to enable effective writ review if the aggrieved party was equally free to wait for a final judgment" and pursue the issue by appeal].)

In the end, we conclude that the absence of express language in section 877.6 making a writ of mandate the exclusive means for securing appellate review of a trial court's good faith settlement determination is not conclusive with respect to the Legislature's intent on this point.  Similarly, while section 877.6, when read as a whole, supports the conclusion the writ remedy provided is exclusive, the statute is not definitive.  Since the

10

statutory language provides no clear guidance on the issue, section 877.6 is ambiguous with respect to the availability of review by appeal from a subsequent judgment. We thus look to the legislative history and underlying purposes of the statute to aid us in discerning the Legislature's intent.

### C. *Purposes and Legislative History of Assembly Bill No. 232*

"The policies underlying the discharge of a good faith settling tortfeasor under . . . section 877 include the promotion of settlement of disputes and the finality of such settlements." (*Barth-Wittmore Ins. v. H. R. Murphy Enterprises, Inc.* (1985) 169 Cal.App.3d 124, 130.) However, "[w]here review of a settlement must await conclusion of the entire case, the intended finality is absent and promotion of settlement obviously thwarted." (*Ibid.*) Recognizing this problem, the Legislature added subdivision (e) to section 877.6 in 1984. (*Barth-Wittmore*, at pp. 130–131; see Assembly Bill No. 232 (1983–1984 Reg. Sess.) (Assembly Bill 232), Stats. 1984, ch. 311, § 1, p. 1552; see also Sen. Com. on Judiciary, Analysis of Assem. Bill 232, as amended May 19, 1984, p. 2 (Senate Judiciary Analysis) ["The purpose of this bill is to provide specifically for an expeditious review of a trial court's determination of the good faith of a settlement in an action involving multiple tortfeasors."].)[6] As the Legislative Counsel's Digest for Assembly Bill 232 notes, the legislation was necessary because "[e]xisting law [did] not expressly provide for appellate review prior to trial of a determination by the court of the good faith of a settlement." (Legis. Counsel's Dig., Assem.

---

[6] On our own motion, we take judicial notice of the legislative history for Assembly Bill 232, as well as the legislative history for a predecessor bill, Assembly Bill No. 3712 (1981–1982 Reg. Sess.) (Assembly Bill 3712). (See Assem. Bill 3712, vetoed by Governor, Sept. 30, 1982, Assem. Final Hist. (1981–1982 Reg. Sess.) p. 2264.) We gave the parties the opportunity to file supplemental briefing with respect to this legislative history, and Chart did so.

11

Bill 232, Stats. 1984, Summary Dig., p. 113.) The amendment therefore provided "that any party aggrieved by such determination may file a petition for review of the determination by writ of mandate, as specified." (*Ibid.*)

The legislative history for Assembly Bill 232 is replete with references to the need for early finality to encourage the settlement of disputes. For example, one legislative staff analysis recites the reasoning of the State Bar, the proponent of the amendment: " 'Under present law, a settling plaintiff and settling defendant or cross defendant who are denied approval of the settlement must undergo further discovery and trial against the [non]settling tortfeasor, thus denying those parties the goals to be achieved by the settlement. Likewise, if a settlement is approved but ultimately held, on appeal after the judgment, to have been in bad faith, the case will have to be re-tried to include the alleged tortfeasors who were improperly removed from the case. *Appellate review delayed until after the judgment thus thwarts the policy of the law to encourage settlement.*' " (Assem. Com. on Judiciary, Analysis of Assem. Bill 232 as introduced, p. 2, italics added (Assembly Judiciary Analysis).) The bill therefore provided for discretionary review with a 20-day filing period from the settlement order, as opposed to the mandatory review and 60-day filing period required for an appeal. (*Ibid.*)

Other staff reports further describe the proposed writ procedure as superior to either pre- or postjudgment appellate review: "[S]ince many settlements are made immediately before trial, it is imperative that the review of the court's determination occur expeditiously and before trial. The writ of mandate procedures are well suited and preferable to a direct appeal of the order which could result in an unacceptable risk of long trial delay. *It is also preferable to an appeal following judgment*, since an immediate reviewable writ [petition] could avoid the incurring of avoidable expenses if

the trial court's determination of the good faith of an agreement was not upheld." (Senate Judiciary Analysis, *supra*, at p. 3, italics added; see also Assem. Com. on Judiciary, Minority Analysis of Assem. Bill 232 as amended Aug. 24, 1983, p. 1; Cal. Dept. of Transportation, Analysis of Assem. Bill 232 as amended March 9, 1983, p. 1; Sen. Republican Caucus, Rep. on Assem. Bill 232 as amended Aug. 24, 1983, p. 2; Sen. Democratic Caucus, 3d reading analysis of Assem. Bill 232 as amended Aug. 24, 1983, pp. 1–2; Sen. Democratic Caucus, Conference Rep. on Assem. Bill 232 as amended Aug. 24, 1983, p. 2.)

In our view, both the legislative history of Assembly Bill 232 and the underlying purposes of the legislation point to a construction of section 877.6, subdivision (e) that would make the filing of a petition for writ of mandate the exclusive means for obtaining appellate review of a trial court's good faith settlement determination. (See *O'Hearn*, *supra*, 115 Cal.App.4th at p. 498 [allowing an aggrieved litigant to challenge a good faith settlement determination in a later appeal "would have a chilling effect on good faith settlements"].) And, as we previously discussed, such a construction is supported, if not mandated, by the statutory language. Indeed, several courts have reached the same conclusion.

In *Main Fiber*, for instance, the Fourth District Court of Appeal surveyed the language, purposes, and legislative history of Assembly Bill 232 and opined: "The same policy reasons which prompted the Legislature to afford parties aggrieved by good faith determinations the right to review by writ of mandate also militate in favor of a construction of the statute which renders a pretrial petition for a writ of mandate the exclusive means of review. A contrary construction, permitting an aggrieved party to postpone review of the good faith determination until after the balance of the claims

13

were tried and a final judgment issued months or years later, would prevent the very finality and certainty that writ review was intended to promote. Years after the settlement, the settling tortfeasor could be dragged back into the action, necessitating a retrial of the plaintiff's claims." (*Main Fiber*, *supra*, 73 Cal.App.4th at p. 1135.) On this basis, the court held that "[a]ny party wishing to challenge the merits of a 'good faith settlement' determination must do so via a petition for writ of mandate in the manner and within the time prescribed by section 877.6, subdivision (e)." (*Id.* at p. 1136; see also *O'Hearn, supra,* 115 Cal.App.4th at p. 499 [agreeing with *Main Fiber* and concluding that "the strong policy of encouraging settlements militates against an interpretation of section 877.6, subdivision (e) which denies early finality to a good faith settlement determination"].)

### D.     Maryland Casualty *and Its Progeny*

The appellate courts that have reached the opposite conclusion largely rely on *Maryland Casualty*. (See, e.g., *Cahill, supra,* 194 Cal.App.4th at pp. 951–956; *Tuff Boy, supra,* 86 Cal.App.4th at pp. 634–636.) In *Maryland Casualty*, the Second District Court of Appeal held that the availability of writ relief did not preclude a subsequent appeal of a trial court's good faith settlement determination, at least when a writ petition had been filed and summarily denied. (*Maryland Casualty, supra,* 81 Cal.App.4th at p. 1426.)

*Maryland Casualty* first considered the language of section 877.6, subdivision (e), stating: "The use of the words '*may* petition,' together with '*shall* be filed,' suggests that a writ petition might not be the exclusive means of reviewing a good faith settlement determination." (*Maryland Casualty, supra,* 81 Cal.App.4th at p. 1420.) As discussed above, we find this argument unconvincing. *Maryland Casualty* then surveyed the legislative history of subdivision (e), focusing on the legislative history for Assembly Bill 3712, a

14

predecessor bill, which was ultimately vetoed by Governor Brown. (*Maryland Casualty*, at pp. 1420–1422.)

According to *Maryland Casualty*, in 1981 the Sacramento County Bar Association proposed the following amendment to section 877.6: " 'An order by the court determining that a settlement was or was not made in good faith *shall not be appealable*. When such a determination is made, the party aggrieved by such order may, within the time hereinafter provided, petition the proper reviewing court to review such determination by writ of mandate. Such petition for writ of mandate may be filed within 20 days after service of written notice of the order, or within such additional time not exceeding 20 days as the trial court may allow.' " (*Maryland Casualty*, *supra*, 81 Cal.App.4th at pp. 1420,1421.) As introduced by Assemblyman Larry Stirling in March 1982, Assembly Bill 3712's proposed subdivision (e) did not include a provision explicitly barring postjudgment appellate review. (*Maryland Casualty*, at p. 1422; see Assem. Bill 3712, as introduced Mar. 22, 1982, proposed § 877.6, subd. (e).) *Maryland Casualty* also reports that a copy of the State Bar proposal from Assemblyman Stirling's legislative bill file was edited as follows: "Handwritten parentheses were placed around the proposed nonappealability provision, as were the handwritten notations, 'strike according to author' and 'don't want to preclude.' " (*Maryland Casualty*, at p. 1422.) Furthermore, the Senate Judiciary Committee's analysis of Assembly Bill 3712 expressly provided: "<u>No impact on ability to appeal</u> [¶] A non-settling defendant is presently free to appeal a determination which dismissed a co-defendant pursuant to a settlement after judgment is entered, and this bill would not affect that right of appeal." (Sen. Com. on Judiciary, Analysis of Assem. Bill 3712, at p. 4.)

15

Late in the legislative process, the Legislature amended Assembly Bill 3712 to include a nonrelated provision involving the approval of certain personnel assignments by the presiding judge of the superior court.  (See *Maryland Casualty*, *supra*, 81 Cal.App.4th at p. 1422.)  Apparently, Governor Brown vetoed Assembly Bill 3712 due the controversial nature of this provision.  (*Maryland Casualty*, at p. 1422, citing Governor's veto message to Assem. on Assem. Bill 3712 (Sept. 30, 1982) 10 Assem. J. (1981–1982 Reg. Sess.) p. 18794 [noting that the issue of assignments for superior court clerks " 'merits further legislative review' "].)  *Maryland Casualty* relied on this legislative history to conclude that "while the Legislature viewed a writ petition *before* trial as a *preferable* means of reviewing good faith settlement determinations, section 877.6[, subdivision] (e) does not foreclose postjudgment review." (*Maryland Casualty*, at p. 1423.)

We are less persuaded by this legislative history.  First, although *Maryland Casualty* found relevant the fact that the bill's author "expressly opposed the nonappealability language" (*Maryland Casualty*, *supra*, 81 Cal.App.4th at pp. 1423–1424), it is well established that "[i]n construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it. [Citations.]  Nor do we carve an exception to this principle simply because the legislator whose motives are proffered actually authored the bill in controversy [citation]; no guarantee can issue that those who supported [the] proposal shared [the author's] view of its compass." (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589–590; accord, *California Teachers Assn. v. Governing Board* (1983) 144 Cal.App.3d 27, 35; see *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30 ["as a general rule in order to be cognizable, legislative history must shed light on the collegial view of the

16

Legislature *as a whole*"]; *id.* at p. 37 [rejecting authoring legislator's files as a permissible source of legislative history when there is no evidence the documents were communicated to the Legislature as a whole].) Indeed, Chart concedes as much.

Consequently, "[a] legislator's statement is evidence of legislative intent only if it provides the history of the legislation—events which occurred or arguments made during its passage." (*California Teachers Assn. v. Governing Board, supra,* 144 Cal.App.3d at p. 35.) Moreover, "[t]hese standards for consideration of legislators' statements go to admissibility, rather than weight, of the evidence offered. (*Ibid.*) If we were attempting to discern the legislative intent animating Assembly Bill *3712*, we might find the statement of the bill's author admissible as it reflected arguments made in the Senate Judiciary Committee analysis for Assembly Bill 3712, which, as mentioned above, clearly stated that the amendment would not preclude postjudgment appellate review.

Here, however, we are concerned with the legislative intent underlying Assembly Bill *232*, enacted by a subsequent Legislature. Our review of the legislative history for Assembly Bill 232 has not uncovered *any* express discussion of the continued viability of postjudgment appellate review. In addition, the only reference to Assembly Bill 3712 in the legislative history for Assembly Bill 232 is a repeated comment that the prior legislation contained nearly identical provisions and was vetoed for unrelated reasons. (Assembly Judiciary Analysis, *supra,* at p. 2.; Senate Judiciary Analysis, *supra,* at pp. 1, 7.) In these circumstances, the author's statements about Assembly Bill 3712 add little to our understanding of the intent underlying Assembly Bill 232.

Nor do we find helpful the comment in the Senate Judiciary Committee analysis of Assembly Bill 3712 regarding the continued viability of postjudgment appeals.  As many courts have noted, "it is difficult to rely on vetoed legislation when determining Legislative intent."  (*Union of American Physicians & Dentists v. Brown* (2011) 195 Cal.App.4th 691, 700, fn. 8; see, e.g., *Snyder v. Michael's Stores, Inc.* (1997) 16 Cal.4th 991, 1003, fn. 4; *California Labor Federation v. Industrial Welfare Com.* (1998) 63 Cal.App.4th 982, 994–995 ["we may not take judicial notice of unenacted legislation for the purpose of giving effect to that legislation in spite of the Governor's veto"]; *Baldwin v. County of Tehama* (1994) 31 Cal.App.4th 166, 181, fn. 10 [consideration of vetoed precursor legislation improperly invites the court "to read legislative history tea leaves"].)  In a similar vein, " '[u]npassed bills, as evidences of legislative intent, have little value.' "  (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 746; see also *People v. Mendoza* (2000) 23 Cal.4th 896, 921; *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 29.)  The reason for these rules is apparent.  A Legislature's intent as to failed legislation sheds little light on a subsequent Legislature's intent regarding enacted legislation.  (See *Mendoza*, at p. 921 [failure to enact could be based on political considerations]; *Arnett*, at p. 28 [proponents may withdraw a provision on purely tactical grounds].)

In this case, the author of Assembly Bill 232 may have realized the State Bar was correct that the proposed statutory writ procedure should be exclusive, and he may therefore have decided against including a discussion of postjudgment appeal in the arguments put forth for the bill.  Or the author may have initially excluded the nonappealability provision for tactical reasons that were no longer relevant.  We will never know.

What we do know is that the legislative history of Assembly Bill 232 does not mention postjudgment appeal as an alternative to the writ procedure the bill creates.[7] Instead, the history repeatedly stresses that " '[a]ppellate review delayed until after the judgment . . . thwarts the policy of the law to encourage settlement.' " (Assem. Judiciary Analysis, *supra*, at p. 2.) Moreover, the obvious impracticality of requiring a settling defendant to continue to monitor or participate in further litigation, including a trial, based on a concern that the good faith of its settlement might be overturned on appeal from a later judgment, makes any other construction of section 877.6 antithetical to the legislation's purpose of providing swift and final settlements. We therefore conclude that the statutory writ of mandate procedure set forth in subdivision (e) of section 877.6 is the sole means of obtaining appellate review of the good faith determination.

---

[7] For this reason, we also reject the notion that use of the term "preferable" in the legislative history for Assembly Bill 232 necessarily means the more desirable but nonexclusive option. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 953.) The most obvious understanding of "preferable" in the context of the legislative analysis is simply "better." (See Senate Judiciary Analysis, *supra*, at p. 3.) But the proposed writ procedure can only be better if it is exclusive. Allowing an additional postjudgment appeal " 'thwarts the policy of the law to encourage settlements.' " (Assem. Judiciary Analysis, *supra*, at p. 2.) While we might be forced to construe "preferable" differently if we were addressing the legislative history for Assembly Bill 3712—with its express statement regarding the nonexclusive nature of the writ remedy it proposed—such a construction would be in clear tension with the underlying purpose of the proposed legislation and the law of good faith settlements generally. Perhaps that is why the proponent of Assembly Bill 232 failed to include any mention of postjudgment appealability in the successor legislation. Regardless, the legislative history for Assembly Bill 232 contains no such statement.

*   *   *

Finally, we take a moment to address Chart's concern that it has not received effective appellate review of the good faith determination because its writ petition was denied summarily. A similar concern can be found in the legislative history for Assembly Bill 3712, which discloses that the Alameda County Bar Association originally objected to the State Bar's proposal because " '[d]iscretionary review of a party's dismissal from an action pursuant to [section 877.6] should not be the sole means of reviewing a trial court's order. . . . A party objecting to a settlement should have the absolute right of a review on the merits to protect his or her interests.' " (*Maryland Casualty, supra*, 81 Cal.App.4th at p. 1421.)

That writ review is discretionary, however, does not mean it is ineffective. Even though "appellate review by extraordinary writ petition is said to be discretionary, a court must exercise its discretion 'within reasonable bounds and for a proper reason.' " (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 113.) In particular, "when writ review is the exclusive means of appellate review of a final order or judgment, an appellate court may not deny an apparently meritorious writ petition, timely presented in a formally and procedurally sufficient manner, merely because, for example, the petition presents no important issue of law or because the court considers the case less worthy of its attention than other matters." (*Id.* at p. 114.) Thus, although appellate courts may decide writ petitions summarily—i.e., without issuing an alternative writ or order to show cause, without oral argument, and without issuing a full written opinion—when a writ petition constitutes the exclusive means of obtaining appellate review of an order, "an appellate court must judge the petition on its procedural and substantive merits, and a summary denial of the petition is necessarily on the merits."

20

(*Leone v. Medical Board* (2000) 22 Cal.4th 660, 669–670; *Powers*, at p. 114, fn. 19; see *Frisk v. Superior Court* (2011) 200 Cal.App.4th 402, 415; cf. *James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1018, fn. 3.)  Chart can rest assured that we carefully considered its writ petition and denied it on its substantive merits.

## III.
## DISPOSITION

The appeal is dismissed.  Respondents are awarded their costs on appeal.

HUMES, P. J.

WE CONCUR:

MARGULIES, J.

BANKE, J.

A164472
*Pacific Fertility Cases*

Trial Court:       Superior Court of the City and County of San Francisco

Trial Judge:       Andrew Y.S. Cheng, Judge

Counsel:

Horvitz & Levy, Julian W. Park, Frederic D. Cohen, Stephen E. Norris; Swanson Martin & Bell, John J. Duffy, Kevin Ringel; Zenere Cowden & Stoddard, Marc G. Cowden and Adam M. Stoddard for Defendant and Appellant Chart Inc.

Galloway, Lucchese, Everson & Picchi, Joseph S. Picchi, Sukhwinder K. Bajwa and Aaron T. Schultz for Defendants and Respondents Pacific Fertility Center, Carl Herbert, Eldon Schriock, Philip Chenette, Carolyn Givens, Liyun Li and Isabelle Ryan.

Morrison & Foerster, Erin M. Bosman, Julie Y. Park, William F. Tarantino and James R. Sigel for Defendants and Respondents Pacific MSO, LLC, Prelude Fertility, Inc. and Joseph Conaghan.